JULIENNE BEAUREGARD & another *vs.* BENJAMIN F. SMITH COMPANY.

Bristol.     October 28, 1912. — January 27, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & DECOURCY, JJ.

*Negligence,* Employer's liability. *Evidence,* Officer's return, Opinion. *Practice, Civil,* Exceptions.

In an action under the employers' liability act against a corporation for causing the death of one of its workmen, it is no defense that, after the employment of such workman and before the accident which caused his death, the defendant had transferred to another corporation the business in which such workman was employed, if the deceased workman had no knowledge of a change in his employer and was not put upon inquiry in regard to such a change.

At the trial of an action under the employers' liability act against a corporation for causing the death of one of its workmen, where the defense relied upon is that before the accident which caused the death of such workman the defendant had transferred to another corporation the business in which the workman was employed, and where the defendant admits the service upon it of a notice of the accident which has been read at the trial, the plaintiff may be allowed to show by the oral testimony of the officer who made such service, that he served the notice upon the defendant in a certain office, near the door of which was a sign bearing the defendant's name, this being material to show that the defendant still was doing business at the time that the workman was killed, and being a matter apart from the officer's official return of service of the notice.

An exception to the exclusion of a question to a witness will not be sustained where it does not appear what the witness's answer would have been.

Where it is a material issue for the jury which of two corporations was doing certain work in which a workman was injured, the superintendent of the person for whom the work was being done, who says that he has personal knowledge on the subject, should not be allowed to testify to his conclusion as to who was doing the work, although he properly may be allowed to state all the facts and circumstances within his knowledge bearing upon this question.

TORT under the employers' liability act by the parents of Alexander Beauregard, as his next of kin, to recover for his instant death without conscious suffering on December 13, 1909, alleged in the first count to have been caused by a defect in the ways, works or machinery of the defendant, and alleged in the second count to have been caused by the negligence of a superintendent of the defendant. Writ dated March 23, 1910.

The answer was a general denial.

In the Superior Court the case was tried before *Hall*, J. The defense principally relied upon was that the plaintiffs' son on and after November 9, 1909, was in the employ of another corporation and was not in the employ of the defendant. It appeared that before November 9, 1909, the plaintiffs' son had been employed by the defendant as a laborer in a ledge which the defendant was engaged in blasting out, in the course of constructing a building in New Bedford known as the Nashawena Mills; that the plaintiffs' son continued working in and about this ledge as a laborer up to the time of his death, which occurred at about eleven o'clock on the morning of December 13, 1909, while he was acting as signal man in whistling to notify the engineer when to operate a derrick in use on the ledge; and that his death was caused by the falling of the derrick.

The defendant introduced evidence tending to show that the defendant was incorporated under the laws of Rhode Island on March 10, 1898; that it operated a saw mill and planing mill at Pawtucket in that State, and also was engaged in the construction business, taking contracts for the erection of buildings in Massachusetts and in other States; that in the autumn of 1909, the defendant decided to sell out its construction business and confine itself to its saw mill and planing mill work, and that for the purpose of purchasing such construction business a new corporation was formed under the laws of this Commonwealth on November 6, 1909, which was called the B. F. Smith Construction Company; that the new company had a capital stock of $300,000, held by thirty or forty stockholders; that Benjamin F. Smith was president of both companies; but that all the other officers were different; that on November 9, 1910, the defendant transferred to the new corporation its entire construction business, including all its outstanding contracts; that about $48,000 then was due on the unfinished contracts and that this amount was collected by the new company for its own use, as well as the money that became due for completing contracts; that after November 9, 1909, the defendant had nothing whatever to do with the construction business, which was conducted entirely by the new company for its own benefit; that the transfer was made between the two companies upon the basis that the defendant should receive fifty-one per cent of the capital stock

of the new company in payment for the construction business and that the new company should retain forty-nine per cent of its capital stock in its treasury to sell for the purpose of raising a working capital; that up to the time of the trial the new company had sold at par about $90,000 worth of its stock, the proceeds of which it had used as working capital; that after November 9, 1909, none of the men, from the superintendent down, who had been in the employ of the defendant at the Nashawena Mills were employed by the defendant; that they all were taken over by the new company, who also engaged new foremen and conducted the business as it saw fit; that the plaintiffs' son continued in the employ of the new corporation after the transfer; and that no notice of the transfer was given to the employees except to the general superintendent in charge of the work. There was no direct evidence that the plaintiffs' son knew of the transfer of the business.

The judge, in regard to the notice of the transfer, instructed the jury as follows:

"On the other hand, if you should find that this was a valid *bona fide* transaction; that for sound business and prudential reasons, and for no other purpose, this defendant did transfer its assets, its credits, and its contracts in good faith to the B. F. Smith Construction Company, then another question would arise for your consideration; and that question is, did Beauregard have knowledge of that transfer? In answering that inquiry you are to take the evidence, and all of it, and determine that as a question of fact. Is there anything here either from evidence, or fair deduction from it, or from the circumstances fairly arising in this case, that leads you to the conclusion that Beauregard knew that there had been a transfer of employer or employment?

"On the other hand, is there anything that put him on his inquiry to know if there was any such changed condition at the quarry, either in the persons who directed him, who gave him orders, change of instrumentalities, of doing business, change in the conduct of the business, change in the terms or time of payment, change in wages or change in manner of the payments? Was there anything anywhere arising out of this case that should have put this deceased Alexander Beauregard upon his inquiry, because if you find upon the second branch of inquiry, that there

were sound prudential reasons for this transfer, and that it was in fact made, then I instruct you, that, if Beauregard did not have knowledge of this transfer, either from some person authorized to give it; or that the whole transaction was such that he was not bound to be put upon his inquiry; or having been put upon his inquiry, that there was nothing that would lead him as a sound reasonable prudent man to believe that there had been a change of employment, then I shall instruct you that, if you do so find, and all the other branches of this case with respect to liability are made out, these plaintiffs, as the next of kin of the deceased Alexander Beauregard, can recover."

The defendant excepted to so much of the judge's charge as permitted the plaintiffs to recover if the plaintiffs' son did not have notice of the transfer from the defendant to the B. F. Smith Construction Company, calling attention to the paragraph of the charge last above quoted.

The testimony of the deputy sheriff, excepted to by the defendant and referred to in the opinion as admitted properly, was to the effect that the witness served a notice of the accident upon the defendant at an office in a certain building in New Bedford and that in the corridor near the door of the office there was a sign bearing the name of the defendant. Before this evidence was offered the notice of the accident had been read at the trial and the defendant had admitted that it had been served upon the defendant. The defendant objected to the evidence on the ground that it was not the officer's official return of the service and that the fact of the service could be shown only by such return. It was admitted by the judge as tending to show that the service was made on the defendant at the office in question, there being near it in the corridor a sign bearing the defendant's name. The plaintiff contended that the evidence was admissible to show that the defendant still was doing business in New Bedford at the time that the plaintiffs' son was killed.

The witness Burton, the question put to whom is referred to in the opinion as having been excluded properly, was the superintendent of the Nashawena Mills and was called as a witness by the defendant. He testified that he knew of his own knowledge who was doing the work for the Nashawena Mills on December 13, 1909: The judge refused to allow the defendant

to ask the witness the question, "Who was doing the work?" but permitted the defendant to examine him in regard to "all the transactions that the Nashawena Mills had with any person or persons, corporation or corporations, that were engaged in the work."

The jury returned a verdict for the plaintiffs in the sum of $3,000; and the defendant alleged exceptions.

*H. W. Hervey,* (*D. F. Slade* with him,) for the defendant.

*J. W. Cummings,* (*C. R. Cummings* with him,) for the plaintiffs.

HAMMOND, J. This action was brought under the so called employers' liability statute by the parents of one Beauregard, deceased, who were dependent in part at least upon him for support, to recover damages for his death. The case was submitted to the jury upon the first and second counts of the declaration, the first alleging defective ways, works or machinery, the second negligence of a superintendent.

One of the grounds of defense was that at the time of the accident, December 13, 1909, the deceased was not in the employ of the defendant. While the evidence upon this branch of the case was conflicting, still the jury could properly have found that the assignment made of the building contract by the defendant to the B. F. Smith Construction Company, hereafter for convenience called the new company, was made in good faith; that, in accordance therewith, at the time of the accident the defendant had entirely ceased to have anything whatever to do with the work, that none of the ways, works or machinery was owned by the defendant or used in its business, but all were owned, used and controlled exclusively by the new company, and that the deceased and all the persons engaged with him in the work, including all those for whose negligence the plaintiffs' attempt to hold the defendant answerable, were actually in the exclusive employ of the new company.

In this state of the evidence as to this branch of the case the jury were instructed in substance that, even if the jury should thus find, still the plaintiff would not thereby be barred from recovery, if the deceased had no knowledge of the change of his employer or was not put upon his inquiry with reference to such change. The record fairly raises the question whether this instruction was correct.

At the time of the contract of service between the deceased and the defendant certain obligations, some at common law and some under the statute, were entered into by the defendant. One was that of paying the deceased his wages during the continuance of the contract. Another was the statutory liability as to the condition of the ways, works or machinery and as to the conduct of the superintendent, both during the continuance of the contract.

In cases like the present the contract continues until terminated by one party with the knowledge of the other or at least under circumstances putting him on inquiry. Not until it has been so terminated is either party released from the burden. This rule is applicable not only to the payment of wages, but to the fulfilment of the other contractual obligations. The delinquent party is held not on the actual condition of things, but on their condition as the other party has the right under the contract to assume them to be. The rule is founded upon principles of justice and fair dealing. The instruction was correct. *Perry* v. *Simpson Waterproof Manuf. Co.* 37 Conn. 520. *Marietta & North Georgia Railroad* v. *Hilburn,* 75 Ga. 379. *Missouri, Kansas & Texas Railway* v. *Ferch,* 18 Tex. Civ. App. 46. See also for a discussion of some of the general principles of the subject, *Nickerson* v. *Russell,* 172 Mass. 584, and *Berry* v. *New York Central & Hudson River Railroad,* 202 Mass. 197, and cases therein cited. 26 Cyc. 1087 and cases cited.

The testimony of the deputy sheriff was properly admitted. It had a bearing on the question whether the defendant was still engaged in the work, and had no reference to his official return of the service of the notice.

The exception to the exclusion of the question put to the witness Burton, as to who was doing the work, must be overruled. In the first place it does not appear what the answer would have been, and secondly the judge ruled that the witness might state all the facts and circumstances bearing upon the question as to who was doing the work. That was enough.

All the other exceptions are waived.

*Exceptions overruled.*