## Palmer v. Main, et al.

## Main v. Hail, et al.

### (Decided May 26, 1925.)

### Appeals from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Master and Servant—Relation May Terminate by Expiration or by Sale of Business.—The relation of master and servant may end by expiration of term of employment, by discharge or resignation of servant, or, in some instances, by sale of business.

2. Master and Servant—Relation Presumed to Continue for Reasonable Time After Sale of Business without Knowledge of Servant.—Where there is no actual change in management of business, and it is continued in same general way after sale by same servants, who are not informed of change of proprietors, relation of master and servant is presumed to continue for reasonable time, and master remains liable to servant to same extent as though no sale had taken place, and burden of showing knowledge on part of servant is on master.

3. Master and Servant—Old Employer Held Liable Under Compensation Act on Sale of Business without Knowledge of Employe.—Where at time of injury to employe, employer had sold business 15 days before injury, but relation of employer and employe still continued because of employe's ignorance of such sale, and old employer had not withdrawn his election to operate under Workmen's Compensation Act, he continued liable under such act.

4. Master and Servant—Accident "Arising Out of Employment" Defined.—An accident "arises out of employment," within meaning of Workmen's Compensation Act, when it is direct and natural result of risk reasonably incident to employment, in which injured person was engaged.

5. Master and Servant—Injury to Employe Struck by Automobile Held One "Arising Out of Employment."—Injury to employe struck by an automobile while on an errand for his master, was a direct and absolute result of risk reasonably incident to employment and was an accident "arising out of employment," within the Workmen's Compensation Act.

6. Master and Servant—New Employer Purchasing Business Held Not Liable under Compensation Act without Election under it.—The Workmen's Compensation Act is elective, and where neither employe nor employer had elected to operate under its provisions although employe had accepted provisions with previous employer but had not made election after sale to new employer 15 days before injury, employe cannot recover against new employer under such act for injuries received.

O'NEAL & O'NEAL for appellant Earl Palmer, and appellees Egbert and Eustace Hail.

CHARLES CARROLL for Elizabeth Main.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in each case.

Prior to September 2, 1924, Earl Palmer was the owner of the Kenyon Building in Louisville, and W. T. Main was in his employ as janitor. Both had accepted the provisions of the Workmen's Compensation Act. On September 2, 1924, Palmer sold and conveyed the property to E. A. and Eustace Hail, who continued to

conduct the property as an office building. At the time of the sale W. S. Adams was the manager of the building and after the sale he continued to act in the same capacity for the purchasers. On September 17, Adams, who had charge of the building, was absent, and the acting manager had sent Main out into the city to ascertain why a certain employe had not reported for duty. While on this errand Main was struck by an automobile driven by a stranger and received injuries from which he died four days later.

Elizabeth Main, the widow of the decedent, filed with the Workmen's Compensation Board a claim for compensation against both Palmer and the Hails. It was allowed against Palmer, but refused against the Hails. On appeal to the circuit court the action of the board was affirmed. Palmer has appealed from the judgment against him, and Elizabeth Main has prosecuted a separate appeal from so much of the judgment as disallowed compensation against the Hails.

1. The propriety of the award against Palmer is challenged on the ground that the relation of master and servant is essential to liability under the Workmen's Compensation Act, and that at the time of the accident Main was not in Palmer's employ. The relation of master and servant may end by the expiration of the term of employment, by the discharge or resignation of the servant, or, in some instances, by the sale of the business. As Main was not employed for a definite period of time, and did not quit work either voluntarily or by directions of Palmer, it results that his employment under Palmer continued unless ended by the sale of the building. The rule seems to be, as between the parties, the relation of master and servant does not necessarily terminate by the sale and transfer by the master to a third person of the property and business in connection with which the relation arose and exists. On the contrary, where there is no actual change in the management of the business, and it is continued in the same general way after the sale by the same servants and employes, and the servants are in no way expressly or otherwise informed of the transfer and consequent change of proprietors, the relation is presumed to continue for a reasonable time and the master remains liable to them to the same extent as though no sale or transfer had taken place, Benson v. Lehigh Valley Coal Co., 124 Minn. 222, 114 N. W. 774, 50 L. R. A. (N.

S.) 170; and the burden of showing knowledge on the part of the servant is upon the master. In Beauregard v. Benjamin F. Smith Co., 213 Mass. 259, 100 N. E. 627, 45 L. R. A. (N. S.) 200, one of the defenses was that prior to Beauregard's death defendant had sold the business to another company, and that all the ways, works and machinery were owned, used and controlled by the new company, and that deceased and all the persons engaged with him in the work, including all those for whose negligence plaintiffs attempted to hold defendant answerable, were actually in the exclusive employ of the new company. Affirming the judgment the court said:

"In cases like the present the contract continues until terminated by one party with the knowledge of the other, or at least under circumstances putting him on inquiry. Not until it has been so terminated is either party released from the burden. This rule is applicable not only to the payment of wages, but to the fulfillment of the other contractual obligations. The delinquent party is held not on the actual condition of things, but on their condition as the other party has the right under the contract to assume them to be. The rule is founded upon principles of justice and fair dealing."

The board found that Main continued to work without notice of the sale of the building, and not being able to say that there was no evidence on which to base the finding, the finding will not be disturbed. As the relation of employer and employe had not ended at the time of the accident, and as Palmer then had not withdrawn his election to operate under the Workmen's Compensation Act, it follows that he continued liable under the provisions of that act.

But the point is made that the accident to Main did not arise out of his employment. It is true that many of the authorities lay down the broad rule that an accident does not arise out of the employment where it occurs upon the street from causes to which all other persons upon the street are likewise exposed, while others recognize the same rule, but make an exception in the case of messengers, collectors, canvassers, draymen and others, who, by reason of the fact that they are obliged to be continuously on the street, or at least spend a considerable portion of their time there, are subjected to

street dangers to a greater extent than the public in general. See authorities cited in note to Hopkins v. Michigan Sugar Co., L. R. A. 1916A 310. In our opinion, neither the general rule nor the exception is supported by sound reasoning. It is at once apparent that if all accidents due to risks to which the general public are subjected are to be excluded, many employes will be deprived of the benefits of the act. Moreover, if the time that the employe is exposed to the street danger is to control, not only will there be great confusion in drawing the line of demarcation, but we shall have many cases where compensation will be allowed one employe and denied to another, although engaged in the same character of work at the time of the accident. Not only so, but the result will be that an employe who is entitled to the protection of the act while on the master's premises will forfeit that protection whenever he is sent into the street on a special errand requiring only a small portion of his time. We have, therefore, reached the conclusion that an accident arises out of the employment within the meaning of the Workmen's Compensation Act if it was the direct and natural result of a risk reasonably incident to the employment in which the injured person was engaged, and many courts take the same view of the question. Thomas v. Proctor & Gamble Mfg. Co., 104 Kan. 432, 179 Pac. 372, 6 A. L. R. 1145; Katz v. Kadans & Co., 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401; Chandler v. Industrial Commission, 55 Utah 213, 184 Pac. 1020, 8 A. L. R. 930; Dennis v. A. J. White & Co. (1917), A. C. 479, Ann. Cas. 1917E. 325, 15 N. C. C. A. 294; Bett v. Hughes (1914), 52 Scot. L. R. 93, 8 B. W. C. C. 362.

In announcing judgment in Dennis v. A. J. White & Co., the Lord Chancellor made the following interesting observations:

"If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle or on an omnibus or car, and he sustains an accident by reason of the risks incidental to the streets, the accident arises out of as well as in the course of his employment. The frequency or infrequency of the occasions on the risk is incurred has nothing to do with the question whether an accident resulting from that risk arose out of the employment. The use of the

streets by the workman merely to get to or from his work, of course, stands on a different footing altogether, but as soon as it is established that the work itself involves exposure to the perils of the streets the workman can recover for any injury so occasioned. As it was put by Lord Parmoor in his judgment in Thom v. Sinclair (1917), A. C. 127, Ann. Cas. 1917D 188, in this House, 'The fact that the risk may be common to all mankind does not disentitle a workman to compensation if in the particular case it arises out of the employment.'

"There are, of course, cases in which it is necessary to inquire whether the nature of the employment specially exposes a workman to a risk of a general nature. In the case of injury by lightning it is very material to inquire whether the work involves special exposure to the danger of being so struck, as in the case of employment upon a steeple or elevated scaffolding. In the case of injury by a bomb thrown from hostile aircraft the fact that the workman was engaged on work in a building brilliantly lighted so as to attract the notice of the enemy crews might be most material as showing that the injury by the bomb was one which arises out of the employment. In the case of sunstroke or frostbite it is material to show that the work involves a special exposure to the heat or the cold. If the injury is the result of an assault it is material to show that the employment is such as to involve liability to such mishaps; as in the case of a gamekeeper or watchman; see Mitchinson v. Day (1913), 1 K. B. 603, and Weekes v. Stead (1914), 7 B. W. C. C. 398. Where the risk is one shared by all men, whether in or out of employment, in order to show that the accident arose out of the employment, it must be established that special exposure to it is involved. But when a workman is sent into the street on his master's business, whether it be occasionally or habitually, his employment necessarily involves exposure to the risks of the streets and injury from such a cause arises out of his employment. There is nothing in the act about any necessity for showing that the employment involves an extra or special risk, and once it is clear, as it is in the present case, that the accident was the result of a risk necessarily incidental to the performance

of the servant's work, all inquiry as to the frequency or magnitude of the risk is irrelevant. It is quite immaterial whether the nature of the employment involves continuous or only occasional exposure to the dangers of the streets. The frequency of the exposure to a risk increases the chance of the occurrence of an accident, but it has no bearing on the question whether it arose out of the employment, which is settled by the fact that such exposure was one of its terms whether on many occasions or one.''

Equally pertinent and interesting is the following language of the Lord President (Lord Strathclyde) in Hughes v. Bett, a case where a coachman, with the knowledge of his employer, rode a bicycle to a postoffice to call for a letter and was injured by a man lurching against the bicycle:

''But it was argued to us that the risk here was not incidental to the respondent's employment, because the employment was not one in which the workman was exceptionally exposed to the danger which caused the accident. It was said that the same accident might have befallen any member of the public who chanced to be riding a bicycle on that road at that time. That is true, but irrelevant. The statute recognizes no such distinction. If the distinction were sound, then the vast majority of workmen would be deprived of the benefits of this. act, because they in the course of and arising out of their daily employment, encounter the very same risk which are faced every day by members of the public. Members of the public do not recover compensation because either they are not employed or the accident happened when they were not in the course of their employment. The argument that was advanced to us was that a risk was never incidental to the employment if it was a risk which might befall any member of the public. That argument was advanced, as will be seen from an examination of the report, in McNiece's case (1911), Sc. Ct. Sess. 12, and was there negatived, as will be seen by an examination of Lord President Dunedin's opinion in the case. Therefore, McNiece's case (1911), Sc. Ct. Sess. 12, is an authority pre-

cisely in point. The fallacy was admirably exposed in the opinion of Lord Justice Buckley in the case of Pierce (1911), 1 K. B. 997, 1003, where he says: 'The question whether the accident is the result of a risk to which all mankind are more or less exposed is in my judgment not an exhaustive test of the question whether or not the accident arises out of the employment. The words 'out of' necessarily involve the idea that the accident arises out of a risk incidental to the employment. An accident arises out of an employment where it results from a risk incidental to the employment as distinguished from a risk common to all mankind although the risk incidental to the employment may include a risk common to all mankind.''

"But it was argued to us that there was a distinction between the case we have before us and these two decisions to which I have referred in respect of the frequency with which the workmen in these two cases were compelled, by the nature of their employments, to traverse the streets, and the infrequency of the respondent's visits to Milnathort post office. If, it was argued, the respondent had gone oftener to the post office (how much oftener no man can tell) then the risk would have been incidental to his employment and his right to recover clear. But if he went seldom to the post office (how much more seldom no man can tell) then the risk would have been one to which all the world was liable and his right to recover would be barred. That argument is obviously unsound for this reason, that it makes the character and quality of the risk dependent upon the number of times which the workman is called upon to face it. The unsoundness, or rather the absurdity of the criterion is, I think, well exemplified in the case before us. For it was conceded that, if the respondent had harnessed his horses and driven to the post office for his employer's letters, then an accident which had chanced to befall him on the road would have been an accident arising out of and in the course of his employment, and yet it is found as one of the facts in this case that it was just as much part of the man's employment to go to and fro on the road, between his mistress' house and the post office, on his bicycle as it would have been to have gone in the carriage, and

the carriage accident would have warranted a claim for compensation under the statute, even although he had visited the post office only once in a way in the carriage instead of going regularly, when he was bidden to do so, on his bicycle.''

Since the service which Main was required to perform necessarily exposed him to the danger of being struck by an automobile while on the street, it follows that the injury was the direct and natural result of a risk reasonably incident to the employment, and that neither the Workmen's Compensation Board nor the circuit court erred in holding that the accident arose out of the employment.

2. On the appeal of Elizabeth Main against the Hails it is sufficient to say that our Workmen's Compensation Act is elective, and at the time of Main's injuries neither he nor the Hails had elected to operate under its provisions. It follows that compensation against the Hails was properly denied.

Wherefore the judgment in each case is affirmed.