## STANDARD OIL CO. v. FIDELITY & CASUALTY CO. OF NEW YORK.

### Civ. A. No. 1015.

District Court, W. D. Kentucky, at Louisville.

Aug. 2, 1946.

Chas. G. Middleton, William Mellor, and Bullitt v. Middleton, all of Louisville, Ky., for plaintiff.

Robert P. Hobson and Woodward, Dawson, Hobson & Fulton, all of Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

Standard Oil Company (hereafter referred to as Standard), incorporated in the State of Kentucky, filed this action November 13, 1945, seeking to recover from the defendant, the Fidelity and Casualty Company of New York (hereafter called Fidelity), $7,743.35, with interest. $6,950 represented the amount of a compromise payment to Otto Long, on account of injuries sustained by Long May 18, 1945, while employed by Arthur B. Hook, an independent contractor engaged in making repairs and improvements at the filling

station owned by Standard located at Preston Street and Eastern Parkway in Louisville, Kentucky. The remaining sum sought represented court costs, attorneys' fees and expenses incurred by Standard in defending and compromising the suit in the Jefferson Circuit Court.

Contemplating a program of alterations, repairs, improvements, and construction in its properties owned, leased or occupied by it in the States of Kentucky, Oklahoma, Georgia, Mississippi and Florida, Standard procured a policy of insurance from defendant. The coverage of that policy involved in this proceeding is as follows:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident on or away from the premises and arising from the work described in Declaration 5 performed for the insured by independent contractors, or from omissions or supervisory acts of the assured in connection with such work."

The policy contained a similar clause with respect to property damage liability and also the usual clause obligating Fidelity to defend suits against the insured alleging an injury and seeking damage on account thereof.

On May 18, 1945, Arthur B. Hook had been engaged by Standard as an independent contractor, to make alterations and improvements to Standard's filling station at Preston Street and Eastern Parkway. On that day, Otto Long, an employee of Arthur Hook, was working and while standing on a scaffold in the grease-rack room of the filling station, was injured by an employee of Standard at the filling station opening an overhead door leading into the grease-rack room, the opening of which knocked Long from the scaffold. He sustained serious and painful injuries by that fall.

On July 31, 1945, Long filed suit against Standard in the Jefferson Circuit Court seeking to recover damages in the sum of $12,500. on account of his injuries. The Fidelity, upon being notified of the accident, denied that there was any coverage under the terms of its policy and declined to defend the action.

Standard and Fidelity entered into an agreement November 7, 1945, in which it was stated that Standard had on October 30, 1945, paid to Long $6,950 and costs in the Jefferson Circuit Court action. Fidelity agreed that the settlement provided an advantageous disposition of the suit and approved the settlement. Fidelity, by the terms of that agreement, denied that its policy provided any liability coverage on account of the injury. This suit resulted.

A correct decision of the case depends upon a proper construction of the words in the coverage clause of the policy "arising from the work." Both parties agree that if the accident in which Long was injured arose from the work, Standard should recover.

Counsel for Fidelity contend that the real test of defendant's liability in this case, is whether the work being done by Hook's employees, including Long, was the proximate cause of Long's injury. If the work being done by Hook was the proximate cause of Long's injury, then his injury was caused by and was one "arising from the work."

It is contended that the policy in question is not a public liability policy, whereby the insurer insures the insured against liability imposed by law for all injuries or damage which may be done by the acts of the employees of the independent contractor.

Defendant relies upon the cases of Lexington Railway System v. True, 276 Ky. 446, 124 S.W.2d 467; Michigan Stamping Company v. Michigan Employer's Casualty Company, 235 Mich. 4, 209 N.W. 104; Gulf Portland Cement Company v. Globe Indemnity Company, 5 Cir., 149 F.2d 196; and Dixie Pine Products Company v. Maryland Casualty Company, 5 Cir., 133 F.2d 583.

Plaintiff relies upon Hollenbach Company v. Hollenbach, 181 Ky. 262, 204 S.W.

152, 13 A.L.R. 524; Palmer v. Main, 209 Ky. 226, 272 S.W. 736; Ocean Accident & Guarantee Corporation v. Northern Texas Traction Company, Tex.Civ.App., 224 S.W. 212; Avery v. American Automobile Insurance Company, 350 Mo. 395, 166 S.W.2d 471, and Lewis v. Fidelity & Casualty Co. of New York, 304 Pa. 503, 156 A. 73.

### Findings of Fact.

(1) Standard is incorporated under the laws of the State of Kentucky and Fidelity is incorporated under the laws of New York. The Court therefore has jurisdiction because of the diversity of citizenship and the requisite jurisdictional amount in controversy. Title 28 U.S.C.A. § 41.

(2) Arthur B. Hook on May 18, 1945, was employed as an independent contractor by Standard and had in his employ Otto Long, who was injured by being knocked from a scaffold in the grease-rack room of Standard's filling station at Preston Street and Eastern Parkway, Louisville, Kentucky.

(3) Otto Long was caused to fall from said scaffold when William V. Hook, an employee of Standard, negligently opened an overhead door leading into the grease-rack room at the filling station.

(4) William V. Hook, in opening the door which struck Long, was entering the grease-rack room to remove a battery charger belonging to Standard, to prevent it from being damaged by water, which Otto Long and other employees of Hook were using in washing the ceiling of the grease-rack room.

(5) July 31, 1945, Otto Long instituted a suit in the Jefferson Circuit Court against Standard to recover $12,500 on account of the injuries received by him in the fall.

(6) Standard settled the claim of Long against it by paying in compromise settlement $7,743.35. This amount was paid October 30, 1945, and included attorneys' fees, court costs, expenses and payment to Long of $6,950.

### Conclusions of Law.

(1) The injuries sustained by Long were caused by accident on the premises of Standard and arose from the work which Arthur Van Hook, as an independent contractor, was employed by Standard to do at the latter's filling station located at Preston Street and Eastern Parkway in Louisville, Kentucky, the work consisting of improvements and repairs to Standard's station.

(2) The compromise settlement by Standard with Long was made with the approval of Fidelity, the latter reserving its contention that the coverage of its policy No. S 21783 issued June 28, 1944, did not embrace liability on its part to pay any sum on account of the injuries sustained by Long, and did not obligate it to defend the action instituted by Long against Standard in the Jefferson Circuit Court.

(3) Plaintiff Standard is entitled to recover judgment in this action against Fidelity in the sum of $7,743.35, with interest at six percent per annum from October 30, 1945 until paid and the costs of this action.

### Comment.

As stated above, a proper decision of this case depends upon the determination as to whether the injuries sustained by Long arose from his work. In the case of Lexington Railway System v. True, supra [276 Ky. 446, 124 S.W.2d 468], a motorman of a street car, while proceeding along the streets of Lexington, Kentucky, was struck and killed by a bullet from a small rifle carelessly fired by a boy. The Court held that the injury received by the motorman had no causal connection with the work that the motorman was performing; that it did not follow as a natural incident to the work and was an injury to which all other persons were equally exposed, and to which the motorman was exposed equally apart from his employment. Construing the phrase "arising out of his employment" the Court said:

"There must be a causal relation between the employment and the accident. It is not enough that the injured person was at the place of the accident because of his employment unless the injury is the result of some risk peculiar to the employment. The injury must be incidental to the nature of the employment. If the

injury occurred by reason of some cause having no relation to the employment, it could not be said to 'arise out of the employment.'"

The case of Hollenbach Company v. Hollenbach, supra [181 Ky. 262, 204 S.W. 160], thus states the rule:

"An injury may be said to arise out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury."

In Palmer v. Main, supra [209 Ky. 226, 272 S.W. 738], the phrase in question is given this meaning:

"We have therefore reached the conclusion that an accident arises out of the employment within the meaning of the Workmen's Compensation Act if it was the direct and natural result of a risk reasonably incident to the employment."

In the case of Standard Oil Company v. Witt, 283 Ky. 327, 141 S.W.2d 271, 275, it was held that Witt's death resulted from an accident arising out of his employment, when he came to his death in a fire which destroyed a hotel in Barbourville, Kentucky, where he had stayed over the weekend intending to resume work on Monday morning at Corbin, Kentucky. It was held that Witt's death resulted from an accident "arising out of his employment." See also Harbison-Walker Refractories v. Brown, 296 Ky. 629, 178 S.W.2d 39; Rex-Pyramid Oil Company v. Magan, 287 Ky. 459, 153 S.W.2d 895.

In the case of Louisville & Jefferson County Air Board v. Riddle et al., 301 Ky. 100, 190 S.W.2d 1009, 1011, the Court, in an opinion by Judge Sims, said that an injury arises out of the employment "* * * when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury."

Both plaintiff and defendant refer to the case of Ocean Accident & Guarantee Corporation v. Northern Texas Traction Company, supra [224 S.W. 215]. There Ocean issued to the Traction Company a policy insuring the legal liability of the latter on account of "injuries * * * proximate-

ly caused by the performance of work," undertaken by an independent contractor. The employee of the independent contractor, while engaged in doing work provided for in the contract, was struck by a street car of the Traction Company. It was claimed by the Insurance Company in that case that the employee's injuries were not caused by the performance of the work undertaken by the independent contractor. The Court said:

"It would be difficult to attribute any reasonable meaning to the language that the injury must be 'caused by the performance of the work' unless that language be interpreted as meaning substantially that the injury must be sustained by reason of the performance of the work and as an incident thereto, and we think such is a proper and reasonable construction to be placed on that language in the policy."

The case of Michigan Stamping Company v. Michigan Employer's Casualty Company involved a policy issued by the Casualty Company to the Stamping Company, indemnifying the latter on account of its legal liability for bodily injury, including death, "by reason of the performance of the work let by the assured to independent contractors."

The independent contractor was engaged in enlarging the plant and premises of the Stamping Company, and while so engaged, two of its employees were killed by reason of the negligent operation of the Stamping Company's crane by its employee. The Stamping Company settled the claims for the death of the sub-contractor's employees and sued the Casualty Company. The facts are therefore similar to the facts in the case at bar.

The Michigan Court held that there was no liability on the part of the Casualty Company and said [235 Mich. 4, 209 N.W. 106]:

"The injuries Quick and Mogg (sub-contractor's employees) sustained were not 'by reason of the performance of the work' the contractors were doing. They were injured in the performance of their work, but not 'by reason thereof.' This language clearly applies to injuries sustained by per-

sons not employed, due to the manner in which the work was performed by the employees of the contractors."

Counsel for Standard point out that the policy in that case contained a clause excluding liability on account of accidents "caused or suffered by any employee or employees of the assured." The Court's opinion, however, seems to have been rested upon its conclusion that the injuries sustained by the sub-contractor's employees could not be said to have resulted "by reason of the performance of the work" the sub-contractor was doing.

I do not believe this construction is in line with the construction placed upon similar language by the Court of Appeals of Kentucky, particularly the language in the case of Palmer v. Main, supra, in which it is said an accident arises "out of the employment" if it is the direct and proximate result of a risk reasonably incident to the employment.

The decision of this case is controlled by the construction by the Court of Appeals of Kentucky of the phrase "arising from the work." All of the cases from Kentucky, referred to by counsel, involve the construction of the Kentucky Workmen's Compensation Law. KRS 342.001 et seq. Defendant contends that coverage of the policy in question is limited to the defendant's legal liability for injuries or damage brought about as the proximate result of the negligence or wrongful acts of the employees of the independent contractor. The language used in the coverage clause of the policy is not susceptible to that narrow construction. A simple exception clause would have accomplished that purpose had that been the intention of the parties. The meaning of the policy must be determined from the language used.

In the case of Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 14, Justice Rutledge, now a member of the Supreme Court, then in 1940, speaking for the United States Circuit Court of Appeals for the District of Columbia said, in construing the meaning of the phrase "arose out of his employment":

"Nor is it necessary, as these cases show, that the particular act or event which is the immediate cause of the injury be itself part of any work done for the employer by the claimant or others."

It is there held that no more is necessary than that the work subject the employee to a peril which comes from the fact that he is required to be in the place where it strikes when it does so.

The purpose of the parties in causing the issuance of the policy must be determined by the language of the policy itself, as there is no claim or allegation in the pleadings that the policy did not embody the agreement of the parties. Accordingly, it is my opinion that the legal liability of Standard, which Fidelity insured on account of damages for injuries sustained by Long, arose "from the work."

Judgment will be entered in accordance with this conclusion.