**CONTINENTAL CASUALTY COMPANY, a corporation, Plaintiff,**

**v.**

**GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD., a corporation, and Dolores Fullerton, Defendants.**

**Civ. No. 9950.**

United States District Court
D. Oregon.

July 20, 1959.

David Sandeberg, Portland, Or., for plaintiff.

Kenneth E. Roberts, Mautz, Souther, Spaulding, Denecke & Kinsey, Portland, Or., for defendants.

EAST, District Judge.

These proceedings were originally commenced as a declaratory judgment action, and the instant matter before the Court is upon the segregated issue of coverage under the policies of insurance issued by the parties, respectively.

It conclusively appears from the Amended and Supplemental Pretrial Order, admitted facts and the documentary evidence received into evidence that:

### I.

Plaintiff is a corporation, organized and existing under the laws of the State of Illinois and, at all times herein mentioned was licensed to carry on and did carry on the business of insurance underwriting in the State of Oregon and elsewhere in the United States of America; that defendant is a corporation, organized and existing under the laws of Great Britain and Ireland and, at all times herein mentioned was licensed to carry on and did carry on the business of insurance underwriting in the State of Oregon and elsewhere in the United States of America; and that the matter in controversy herein, exclusive of interest and costs, exceeds the sum of $10,000.

### II.

That during all material times Brooks-Scanlon, Inc., a corporation (Brooks), was engaged in logging and lumbering

operations in the City of Bend, Oregon, and that, in connection with said logging and lumbering operations Brooks did, on or about May 27, 1957, enter into a contract with the Austin Company, a corporation (Austin), for the construction of a new building for Brooks and upon land owned by Brooks, referred to by the parties as the "Green Chain Building" at the City of Bend, Oregon. That at all times material herein said contract was in full force and effect. That the mentioned construction company contract contained, *inter alia*, the following Article:

"Article 14.

"Insurance.

"Builder shall carry Contractors Comprehensive Bodily Injury and Property Damage Insurance under such limits of liability, terms and conditions as the Owner may reasonably require and shall comply with Workmen's Compensation Laws relating to the compensation of its injured workmen.

"Builder, at Owner's option and expense, shall furnish an approved Surety Company's bond for the performance of this contract.

"Without cost to Builder, Owner shall furnish windstorm, earthquake and fire insurance covering the work itself, materials and equipment on hand and Builder's equipment, in amounts sufficient to protect the interests of both Owner and Builder, including Builder's equipment, which amounts may be recommended by Builder from time to time during the progress of the work."

### III.

Pursuant to said Article, Austin did provide coverage under a then-existing policy of liability insurance, and on or about October 31, 1957, received from the defendant a Comprehensive General Liability Policy insuring Austin as a building contractor against loss in the amount of $200,000 for each person, and $500,000 for each accident. (Later these limits were increased to $400,000/$1,000,000.)

This policy contained the following material provisions:

"I Coverage A—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

"II Defense, Settlement, Supplementary Payments

"With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

### Exclusions.

"(f) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

"(g) under coverage A, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured."

"7. Severability of Interests

"The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."—

and said policy further provided with reference to other insurance:

"12. Other Insurance

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

This policy also contained the following Additional Interest endorsement:

"1. It is agreed that such insurance as is afforded by the policy under Division A and B of the Insuring Agreements shall also apply to each interest named herein, as an insured; but such inclusion of additional interest or interests shall not operate to increase the limits of the company's liability.

"All owners, or lessees, of real estate property for whom the Austin Company performs operations under contract

"It is further agreed that the insurance protecting the additional interests is restricted to the operations of The Austin Company and its subcontractors."—

and was in the foregoing respects in full force and effect on January 30, 1958.

IV.

That on or about March 27, 1956, the plaintiff did insure Brooks with Special Comprehensive Liability insurance in connection with its said logging and lumbering operations as follows:

"1. Bodily Injury and Property Damage Liability:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability assumed by him under contract (excluding liability under any contract not wholly in writing) or imposed upon him by law;

"(a) for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained or alleged to have been sustained by any person or persons and caused by an occurrence as defined herein; * * * "

This policy contained the following provision with reference to other insurance:

"10. Other Insurance. If at the time of an accident or occurrence there is any other insurance available to the insured (in this or any other carrier) there shall be no insurance afforded hereunder as respects such accident or occurrence except that if the applicable limit of liability of this policy is in excess of the applicable limit provided by the other insurance available to the insured this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. It is further provided that with respect to loss arising out of the operation, maintenance or use of any nonowned automobile the applicable insurance afforded by this policy shall be excess over and above such other available insurance. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured."

and was in the foregoing respects in full force and effect on January 30, 1958.

V.

That, on or about the 30th day of January, 1958, one Robert D. Fullerton, an employee of Austin, was climbing from the floor of said Green Chain Building to take part in some construction work provided for in said construction contract,

on a fire wall being constructed next to the roof of said building, and while so doing, was struck by a crane, or a part thereof, being operated by Brooks, and that said Robert D. Fullerton did fall from this position, resulting in injuries, from which he lost his life; that, thereafter, on or about the 11th day of April, 1958, Dolores Fullerton, the widow of said Robert D. Fullerton, did commence an action in this Court against Brooks, said action bearing Civil No. 9724, in which action said Dolores Fullerton did state that she was bringing said action pursuant to the terms of the Oregon Employers Liability Act, ORS 654.305. et seq., and did charge said Brooks with negligence in certain particulars, as more particularly set out in the complaint therein, and did seek judgment against said Brooks in the sum of $175,000 for the death of Robert D. Fullerton; that, on May 14, 1958, the plaintiff's attorneys did, in writing, tender to the defendant the defense of the action filed by Dolores Fullerton and did demand that the defendant accept coverage thereof; that defendant did reject said tender and did decline to accept coverage as demanded; and that, prior to the trial of said action brought by Dolores Fullerton against Brooks, plaintiff, without admitting any liability on the part of Brooks, and at all times expressly denying such liability for the happening of the accident and the death of Robert D. Fullerton, entered into negotiations for and did consummate, on November 24, 1958, a settlement and compromise of all of Dolores Fullerton's claims against Brooks arising out of the accident and death for the sum of $30,000.

So far as the instant segregated issue is concerned, the plaintiff contends:

That defendant's policy provided coverage to Brooks in said action filed against it by Dolores Fullerton and that this coverage was primary and that any coverage provided by the plaintiff's policy was secondary thereto. If the Court determines that said coverages were not primary and secondary, as herein contended, the plaintiff contends that the coverages are pro rata between plaintiff and defendant, according to the bodily injury liability limits of their respective policies; and that, under the terms of its policy, it was the duty of the defendant to proceed with the defense of the action brought by Dolores Fullerton.

In turn, the defendant contends:

That it provided no coverage to Brooks in the action brought by Dolores Fullerton and was under no obligation to defend Brooks therein, as there was no coverage under the policy and endorsements because of the mentioned Exclusions (f) and (g) of its policy; and since the Additional Interest endorsement attached to defendant's policy provided:

"It is further agreed that the insurance protecting the additional interests is restricted to the operations of The Austin Company and its subcontractors";

that the death of Fullerton did not arise out of the operations of Austin.

In the Court's opinion, it is manifest that Fullerton at the time of his injury was an employee of Austin and that the negligent operation of Brooks' equipment by its servant was the proximate and direct cause of Fullerton's injuries and resulting death therefrom. It is further manifest that Fullerton, immediately before his injuries, was on the premises of Brooks, engaged in the course of his employment in the performance of his duties as an employee of Austin, all pursuant to the joint occupancy of the premises by Brooks and Austin, all pursuant to the aforesaid construction contract. Reason dictates that the purpose, motivation and intentional design in requiring Austin to obtain for the benefit of Brooks additional liability insurance was by reason of the increased hazards to be caused by Austin's construction program. It is axiomatic that increased traffic increases hazards, and, therefore, Brooks' exposure to loss through negligence of its servants was increased by the construction program. Having thus determined the ap-

parent intention of the parties with reference to liability coverage, we approach the respective contentions of the parties.

It must be conceded that plaintiff is liable for its $400,000/$1,000,000 personal injury coverage to Brooks for the loss sustained by Brooks, all pursuant to the terms and conditions of its policy.

■ This Court is of the opinion that, inasmuch as Fullerton was the employee of Austin and not of Brooks, the aforementioned Exclusions (f) and (g) are not available to the defendant. If it had been that Fullerton's injuries and resulting death were due to the negligence of Austin, then the defendant would be entitled to the benefit of said Exclusions. However, as between Brooks and Austin, their respective interests are severable, pursuant to Item 7—Severability of Interests, above mentioned.

"This construction is further supported by decisions which hold that a policy extending coverage to several persons creates several obligations on the part of the insurer, so that a particular insured is not precluded from recovering merely because the claim of another insured is barred under the terms of an exclusion provision. Hoyt v. New Hampshire Fire Ins. Co., 92 N.H. 242, 29 A.2d 121, 123, 148 A.L.R. 484; Wenig v. Glens Falls Indemnity Co., 294 N.Y. 195, 61 N.E.2d 442, 444–445; Pratt v. Hanover Fire Ins. Co., 50 R.I. 203, 146 A. 763, 764–765." Arenson v. National Automobile & Casualty Ins. Co., 45 Cal.2d 81, 286 P.2d 816, 818.

Defendant's further contention "that the death of Fullerton did not result out of the operations of" Austin presents a more difficult problem.

■ Under the factual situation of this case, it is apparent that Brooks was an additional insured as to the full coverage of the defendant's policy for bodily injury, namely, $400,000/$1,000,000, and the only restriction to such coverage, if any, is to be found in the following language in the aforesaid Additional Interest endorsement:

"It is further agreed that the insurance protecting the additional interests is restricted to the operations of The Austin Company and its subcontractors."

Counsel have cited the Court cases dealing with similar restrictive phrases, *viz.*:

"arising from the work described * * * performed for the insured by independent contractors,"

and

"by reason of the performance of the work let by the assured to independent contractors * * *".

However, no case has been cited to the Court dealing with a restrictive phrase such as in the instant case:

"insurance protecting the additional interests is restricted to the operations * * * of independent contractors".

A classical definition of the verb "restrict" and its past participle "restricted," as gleaned from Websters New International Dictionary, is:

"to restrain within bounds; to limit; to confine;"—however, classical definitions are only a beginning, and the meaning of words and phrases are to be further determined from ordinary usage of the word in any particular line of endeavor. It is obvious that the defendant's policy of insurance covers Austin throughout its operations of its business as a "building contractor"; whereas Brooks' coverage as an additional interest relates only to Brooks' operations as an owner "of real estate property for whom The Austin Company performs operations under contract," with the further restriction above mentioned. To this Court the further restriction above quoted neither adds nor detracts to the coverage granted Brooks as an additional interest as owner "for whom The Austin Company performs operations under contract". Reason dictates that the restrictive endorsement has reference to Austin's operations through its agents and servants on the premises of Brooks, all

pursuant to the construction contract. Fullerton was present on the premises of Brooks at the time fate struck in the performance of Austin's operations, and it would do violence to the English language to say that his presence on the premises and his activities was not "restricted to the operations of" Austin.

The Court is of the opinion that Brooks is entitled to the coverage as an owner additional interest under the defendant's contract of Comprehensive General Liability policy for bodily injury as above described, and adopts as authority for that conclusion Standard Oil Co. v. Fidelity & Casualty Co., D.C.W.D. Ky.1946, 66 F.Supp. 603, 604, affirmed by a per curiam opinion, 6 Cir., 162 F.2d 715.

> "Contemplating a program of alterations, repairs, improvements, and construction in its properties owned, leased or occupied by it in the States of Kentucky, Oklahoma, Georgia, Mississippi and Florida, Standard procured a policy of insurance from defendant. The coverage of that policy involved in this proceeding is as follows:

> " 'To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident on or away from the premises and arising from the work described in Declaration 5 performed for the insured by independent contractors, or from omissions or supervisory acts of the assured in connection with such work.' * * *

> "(2) Arthur B. Hook on May 18, 1945, was employed as an independent contractor by Standard and had in his employ Otto Long, who was injured by being knocked from a scaffold in the grease-rack room of Standard's filling station at Preston

Street and Eastern Parkway, Louisville, Kentucky.

> "(3) Otto Long was caused to fall from said scaffold when William V. Hook, an employee of Standard, negligently opened an overhead door leading into the grease-rack room at the filling station.

> "(4) William V. Hook, in opening the door which struck Long, was entering the grease-rack room to remove a battery charger belonging to Standard, to prevent it from being damaged by water, which Otto Long and other employees of Hook were using in washing the ceiling of the grease-rack room.

> "(5) July 31, 1945, Otto Long instituted a suit in the Jefferson Circuit Court against Standard to recover $12,500 on account of the injuries received by him in the fall.

> "(6) Standard settled the claim of Long against it by paying in compromise settlement $7,743.35. This amount was paid October 30, 1945, and included attorneys' fees, court costs, expenses and payment to Long of $6,950."

It appears from the statement of facts that, factually, the Standard Oil case and the instant case would seem to be on all fours. The pertinent parts of the court's opinion in the Standard Oil case are:

> "[1, 2] The decision of this case is controlled by the construction by the Court of Appeals of Kentucky of the phrase 'arising from the work.' All of the cases from Kentucky, referred to by counsel, involve the construction of the Kentucky Workmen's Compensation Law. KRS 342.001 et seq. Defendant contends that coverage of the policy in question is limited to the defendant's legal liability for injuries or damage brought about as the proximate result of the negligence or wrongful acts of the employees of the independent contractor. The language used in the coverage clause of the policy is not susceptible to that nar-

row construction. A simple exception clause would have accomplished that purpose had that been the intention of the parties. The meaning of the policy must be determined from the language used.

"In the case of Hartford Accident & Indemnity Co. v. Cardillo, 72 App. D.C. 52, 112 F.2d 11, 14, Justice Butledge, (sic) now a member of the Supreme Court, then in 1940, speaking for the United States Circuit Court of Appeals for the District of Columbia said, in construing the meaning of the phrase 'arose out of his employment':

" 'Nor is it necessary, as these cases show, that the particular act or event which is the immediate cause of the injury be itself part of any work done for the employer by the claimant or others.'

"It is there held that no more is necessary than that the work subject the employee to a peril which comes from the fact that he is required to be in the place where it strikes when it does so.

"[3, 4] The purpose of the parties in causing the issuance of the policy must be determined by the language of the policy itself, as there is no claim or allegation in the pleadings that the policy did not embody the agreement of the parties. Accordingly, it is my opinion that the legal liability of Standard, which Fidelity insured on account of damages for injuries sustained by Long, arose 'from the work.' "

See also Duke Power Co. v. Indemnity Insurance Co. of North America, 4 Cir., 229 F.2d 588; I–L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange, 202 Or. 277, 273 P.2d 212, 275 P.2d 226; Lamm v. Silver Falls Timber Co., 133 Or. 468, 277 P. 91, 286 P. 527, 291 P. 375, and Varrelman v. Flora Logging Co., 133 Or. 541, 277 P. 97, 286 P. 541, 290 P. 751.

This Court rejects the "by reason of" and "omnibus clause" line of cases cited by defendant, of which the case of Michigan Stamping Co. v. Michigan Employers' Casualty Co., a 1926 Michigan case, 235 Mich. 4, 209 N.W. 104, is the leading "by reason of" case, concerning which Standard Oil Co. supra, speaks:

"The case of Michigan Stamping Company v. Michigan Employer's Casualty Company involved a policy issued by the Casualty Company to the Stamping Company, indemnifying the latter on account of its legal liability for bodily injury, including death, 'by reason of the performance of the work let by the assured to independent contractors.'

"The independent contractor was engaged in enlarging the plant and premises of the Stamping Company, and while so engaged, two of its employees were killed by reason of the negligent operation of the Stamping Company's crane by its employee. The Stamping Company settled the claims for the death of the sub-contractor's employees and sued the Casualty Company. The facts are therefore similar to the facts in the case at bar.

"The Michigan Court held that there was no liability on the part of the Casualty Company and said [235 Mich. 4, 209 N.W. 106]:

" 'The injuries Quick and Mogg (sub-contractor's employees) sustained were not "by reason of the performance of the work" the contractors were doing. They were injured in the performance of their work, but not "by reason thereof." This language clearly applies to injuries sustained by persons not employed, due to the manner in which the work was performed by the employees of the contractors.'

"Counsel for Standard point out that the policy in that case contained a clause excluding liability on account of accidents 'caused or suffered by any employee or employees of the assured.' The Court's opinion, however, seems to have been rested upon

its conclusion that the injuries sustained by the sub-contractor's employees could not be said to have resulted 'by reason of the performance of the work' the sub-contractor was doing.

"I do not believe this construction is in line with the construction placed upon similar language by the Court of Appeals of Kentucky, particularly the language in the case of Palmer v. Main, supra [209 Ky. 226, 272 S.W. 736], in which it is said an accident arises 'out of the employment' if it is the direct and proximate result of a risk reasonably incident to the employment."

Going to the plaintiff's alternative contention that the defendant's policy coverage to Brooks was primary and that any coverage provided by plaintiff's policy was secondary thereto, or, again in the alternative, that the coverages are pro rata between plaintiff and defendant according to the bodily injury liability limits of their respective policies, we find that the "other insurance" clause in plaintiff's policy reads:

"10. Other Insurance. If at the time of an accident or occurrence there is any other insurance available to the insured (in this or any other carrier) there shall be no insurance afforded hereunder as respects such accident or occurrence except that if the applicable limit of liability of this policy is in excess of the applicable limit provided by the other insurance available to the insured this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. It is further provided that with respect to loss arising out of the operation, maintenance or use of any non-owned automobile the applicable insurance afforded by this policy shall be excess over and above such other available insurance. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured."

and the "other insurance" clause in the defendant's policy reads:

"12. Other Insurance

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

A perusal of the "other insurance" provisions in the plaintiff's and the defendant's policies of insurance, respectively, clearly shows that they are repugnant each to the other and cannot be reconciled. Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., Or., 341 P.2d 110, 115. In this case Lamb-Weston, Inc. was insured by St. Paul Fire & Marine Insurance Company, whose personal liability policy "other insurance" provision was similar to (excess) the plaintiff's herein "other insurance" provision, and the defendant Oregon Automobile Insurance Company, whose personal liability policy "other insurance" provision was similar to (pro rata) the instant defendant's "other insurance" provision.

Therefore, the Oregon court was faced with determining which company should be considered primarily liable, or treating the "other insurance" clause in each insurer's policy as so repugnant that they must both be ignored, and then applying the rule that the loss should be equally prorated between them.

The Oregon Court, after analyzing many cases from other jurisdictions, advises:

"From an examination of the above-cited cases and others of similar import we believe none can be logically acceptable and it is our view that any attempt to give effect to the 'other insurance' provision of one policy while rejecting it in an-

other is like pursuing a will o' the wisp.

"In 1952, the United States Circuit Court of Appeals for the 9th Circuit recognized the futility of a sound rule seeking to determine primary and secondary liability between different insurers covering the same risk, and in Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., 9 Cir., 195 F.2d 958, 959, the Court said:

" 'We have examined cases in other jurisdictions cited by counsel where closely similar or substantially identical disputes between insurance companies have arisen. These decisions point in all directions. One group indicates that the policy using the word "excess" is secondary and that containing the language of the Oregon policy is primary. Examples of these decisions are cited on the margin. Their reasoning appears to us completely circular, depending, as it were, on which policy one happens to read first. Other cases seem to recognize the truth of the matter, namely, that the problem is little different from that involved in deciding which came first, the hen or the egg. See remark of Judge Major in Zurich General Accident & Liability Insurance Co. v. Clamor, 7 Cir., 124 F.2d 717, 719. In this dilemma courts have seized upon some relatively arbitrary circumstances to decide which insurer must assume primary responsibility. Thus one group of cases fixes primary liability on the policy which is prior in date. Another group undertakes to decide which policy is the more specific, holding the one thought more specific to be primary. Another solution is represented by Maryland Casualty Co. v. Bankers' Indemnity Ins. Co., 51 Ohio App. 323, 200 N.E. 849, where it was held that the policy issued to the person primarily liable for the damage is the primary insurance. In sum, the cases are irreconcilable in respect both of approach and result.'

"Also, note Gutner v. Switzerland General Ins. Co., 2 Cir., 1929, 32 F.2d 700; New Amsterdam Casualty Co. v. Hartford Acc. & Ind. Co., 6 Cir., 1940, 108 F.2d 653.

"As a result of these observations the Court determined each company should share proportionately in the loss. In that case, the policy of each insurer provided, in the event of other insurance, theirs should be treated as excess insurance and liability thereunder came into existence only after the limits of the other had been exhausted."

This Court subscribes to the following position of the Oregon Court:

"The 'other insurance' clauses of all policies are but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an 'escape clause') or that used by St. Paul (usually referred to as an 'excess clause') or that used by Oregon (usually referred to as a 'prorata clause'). In our opinion, whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto."

From the foregoing, this Court concludes that the ultimate loss liability sustained by Brooks by reason of the death of Fullerton, to be determined either by agreement of the parties or upon a further hearing herein by this Court as to the reasonableness of plaintiff's compromise settlement of the litigation instituted and conducted by the widow of Fullerton, and attorneys' fees and other expenses in connection therewith, should be borne equally between plaintiff and defendant. Allowance of costs and attorneys' fees, if any, in this case, shall be reserved until determination of ultimate

loss liability as aforesaid or until further order herein.

Counsel for the plaintiff is requested to submit within 30 days from the date hereof suggested findings, conclusions and order as to the segregated issue dealt with hereby and in conformity with the foregoing.