MICHIGAN STAMPING CO. *v.* MICHIGAN EMPLOYERS'
CASUALTY CO.

1. INSURANCE—CASUALTY INSURANCE—LIABILITY OF INSURER.
    Where an owner entered into a contract for the construc-
    tion of an addition to its factory building, and procured
    a casualty insurance policy indemnifying it "against loss
    from the liability imposed by law upon assured for
    damages on account of bodily injuries accidentally suffered
    * * * by reason of the performance of the work let
    by assured to independent contractors," said policy did
    not indemnify assured for injuries caused to employees of
    subcontractors engaged on said construction work through
    the negligence of its own employees.[1]

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—INSUR-
    ANCE.
    Injuries caused to employees of subcontractors engaged
    on construction work by the negligence of employees of
    the owner might have been compensated for under the
    workmen's compensation act, since the injuries arose out
    of and in the course of their employment.[2]

3. INSURANCE—UNAMBIGUOUS POLICY TO BE CONSTRUED BY COURT.
    Where the language of a casualty insurance policy was
    not ambiguous, its construction was for the court and not
    the jury.[3]

4. CONTRACTS—CONSTRUCTION—PRACTICAL CONSTRUCTION BY PARTIES
    CONSIDERED ONLY WHERE INSTRUMENT AMBIGUOUS.
    The practical construction which the parties put upon a
    contract may be considered only in cases where the
    language of the instrument may be said to be ambiguous
    or uncertain.[4]

5. INSURANCE—EFFECT OF OMISSION FROM POLICY—DISTINCTION.
    There is a clear distinction between the effect of an
    omission in a policy which the insurer relies on to defeat
    an action and one which the insured seeks to have in-
    corporated therein as a basis for recovery.[5]

[1]Liability Insurance, 36 C. J. § 52; [2]Workmen's Compensation
Acts, C. J. § 41; [3]Insurance, 33 C. J. § 865; [4]Contracts, 13 C. J.
§ 517; [5]Evidence, 22 C. J. § 1471; Insurance, 32 C. J. § 242.

6. SAME—WAIVER—ESTOPPEL.

> Neglect of the insurer to insert a provision of which its agent was informed at the time the application for insurance was made is, in legal effect, a waiver and estops it from insisting that its omission constitutes a legal defense to an action on the policy.[6]

7. SAME — OMISSION OF PROVISION RELIED ON — REFORMATION OF POLICY NECESSARY BEFORE ACTION MAINTAINABLE.

> Where the insured seeks to have incorporated in a policy a provision on which it relies as the basis of an action, which it claims was omitted, the policy must be reformed to conform thereto before the action may be maintained.[7]

Error to Wayne; Gilbert (Parm C.), J., presiding. Submitted April 14, 1926. (Docket No. 32.) Decided June 7, 1926.

Assumpsit by the Michigan Stamping Company against the Michigan Employers' Casualty Company on a policy of insurance. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Warren, Cady, Hill & Hamblen* (*Kerr, Lacey & Scroggie* and *Edward H. Yost,* of counsel), for appellant.

*Charles F. Meyler* (*Dean W. Kelley,* of counsel), for appellee.

SHARPE, J.    In the early part of 1919, the plaintiff employed an architect to prepare plans and specifications for an addition to its factory building in Detroit. This addition included an extension to its craneway. A contract was thereafter entered into with the Otto Misch Company for its construction.    It contained the following provision:

"The general contractor shall, during the continuance of the work under this contract, also extra work in connection therewith, maintain liability insurance

---

[6]Insurance, 32 C. J. § 242; [7]Reformation of Instruments, 34 Cyc. p. 906.

in a sufficient amount to protect himself and the owner from any liability or damage for injury to any of his employees or other persons including any liability or damage which may arise by virtue of any statute or law now in force or which may hereafter be enacted, and shall secure and protect the owner from any liability or damage whatsoever, for any injury to persons or property."

The contractor's vice-president, Carl S. Barry, thereupon entered into negotiations with Mr. Dresser, of the firm of Gardner & Dresser, the Detroit representative of the defendant company, whose head office is located at Lansing, with a view to securing the liability insurance required by the contract.    He gave Mr. Dresser a copy of the contract, and called his attention to the above provision therein.    The contractor desired to begin work at once, and Dresser advised Mr. Barry that the coverage would be considered as being in immediate effect, and that he would at once so advise the plaintiff company by letter, and that the policy would be forwarded later from Lansing direct to the architect.    Thereafter, on May 8, 1919, Mr. Dresser wrote to the architect the following letter:

"This will advise you that we are this day covering under binder the Michigan Stamping Company jointly with the Otto Misch Company with employer's liability on the contract now under process of construction at the Michigan Stamping Company's plant."

On the same day Dresser wrote the defendant company:

"Today I have sent Albert Kahn, the architect, a letter confirming the covering of the Michigan Stamping Company jointly with the Otto Misch Company for employer's liability on a contract with the Otto Misch Company under the process of construction at the Michigan Stamping Company plant. "I understand from Mr. Barry of the Otto Misch Company that you covered the owner with him on a previous job.    This is the same kind of a policy.    The

estimated payroll for the work being done at the Michigan Stamping Company is $54,000.00.    I believe the rate for a policy of this kind is about $1.00 a thousand.    *    *    *

"The work the Misch Company is doing at the Michigan Stamping Company is building an addition to their restaurant and addition to their craneway. Please forward the rider covering the Stamping Company to the Otto Misch Company as soon as possible.

"Mr. Kahn always requires in the specifications on work left in his office the joint coverage of both the contractor and the owner for compensation.    *    *    *

"Since writing the above, Kahn's office has called and said they wished the policy sent to them before Misch got it.    What they want is an owner's contingent liability policy.    You made one out before, I believe, for a job Misch had from Kahn's office."

On June 5th, and before the policy had been delivered, one Michael Quick, an employee of a subcontractor under the Otto Misch Company, while working on the addition immediately adjacent to the craneway of the plaintiff, was crushed between a traveling crane operated by plaintiff and one of the upright posts supporting the craneway, and died soon after as a result of his injury.    The plaintiff had placed a watchman on the crane to warn the operator by a bell installed for that purpose of the approach of the crane to any of the workmen employed in the erection of the addition, but he had left his post, and the operator, being unable to see that Quick was working in the pathway of the crane, moved it in a manner that produced his injury and death.    On June 13th, the Otto Misch Company wrote the defendant as follows:

"We inclose you our schedule of declarations in connection with the Michigan Stamping Company and the Holley Carburetor Company new buildings which we trust will be satisfactory.

"We also wish to inform you that Whitehead & Kales, the iron contractor erecting the steel for us at the Michigan Stamping Company building, killed

one of their employees recently and we wish you would kindly advise us regarding the accident."

It will be observed that the manner in which Quick was injured was not stated.   On June 16th, Gardner & Dresser, at the request of the contractor, wired the defendant that the Otto Misch Company desired a "copy of their contingent liability policy forwarded at once."   On June 17th (four days after receiving the schedule), defendant issued its policy and mailed it to the architect.   The policy issued was an "Owners' Indemnity and Defense Policy."   Under its provisions the defendant agreed to indemnify the plaintiff company (referred to therein as the assured) —

"against loss from the liability imposed by law upon the assured for damages on account of bodily injuries (including death at any time resulting therefrom) accidently suffered, or alleged to have been suffered, during the policy period defined in said statements, by reason of the performance of the work let by the assured to independent contractors and described in said statements, or through the existence of materials intended for such work placed upon the premises described in said statements, or lawfully maintained upon the ways adjacent thereto, by any person or persons, including watchmen employed by the assured to care for such premises and materials."

A subsequent provision, under the heading "Exclusions," contained the following:

"This policy shall not cover loss or expense on account of accidents caused or suffered by any employee or employees of the assured engaged on work covered by this policy or in connection with same other than the watchmen referred to in section (1) of the insuring agreements."

On July 15th, Gordon Mogg, another employee of a subcontractor under the Otto Misch Company, sustained an injury, resulting from the same cause (the absence of the watchman) as induced Quick's injury,

necessitating the amputation of his left hand. The defendant was notified of the accident on the following day, and, two days later, wrote plaintiff that they had sent the papers in the matter to Mr. Meyler, their attorney in Detroit, and had asked him to get in touch with plaintiff and give it any information it desired. Thereupon Meyler wrote the Otto Misch Company that he had received the correspondence from the defendant and that he would arrange to see them within a few days and relieve them of all trouble in connection therewith.

In August, Gordon Mogg began suit against the plaintiff. Its attorneys at once advised Mr. Meyler, and on the 13th he replied that the defendant denied any liability under the terms of the policy. Several letters and conferences followed, during the course of which defendant, on September 27th, wrote the Otto Misch Company as follows:

"Confirming our conversation, I desire to advise you that notwithstanding the fact that our policy No. 170 was written to cover only the Michigan Stamping Company, yet, we will consider that the coverage was for the Michigan Stamping Company, and the Otto Misch Company, jointly."

The plaintiff thereafter made settlement of both claims, paying $3,000 to each, and brought this action to recover the sums so paid and $1,031.80 for its disbursements and $500 for the disbursements of the Otto Misch Company, for which it had received an assignment, in all $7,531.80.

At the conclusion of the proofs, the trial court denied plaintiff's motion for a directed verdict and, on motion of defendant's counsel, directed a verdict in its favor. Plaintiff reviews the judgment entered thereon by writ of error.

1. Were the accidents covered by the terms of the policy as written? In it the defendant agreed to indemnify the plaintiff—

"against loss from the liability imposed by law upon the assured for damages on account of bodily injuries accidently suffered  *  *  *  by reason of the performance of the work let by the assured to independent contractors and described in said statements."

The statements referred to were furnished to the defendant under a heading, "Schedule of Declarations," and a copy thereof is annexed to and forms a part of the policy issued.    In this schedule the following statements are made:

"1. Name of assured, Michigan Stamping Company.  *  *  *

"4. The assured is an owner who has or will let certain work to independent contractors to which work so let this policy shall alone apply.

"5. A full description of all work to be undertaken by independent contractors and covered by this policy —the locations where such work is to be performed— the estimated total cost of such work—the premium rate to be paid thereon—and the amount of deposit premium are given hereunder:

| Description of Work to be Undertaken by Independent Contractors and Covered by this Policy. | Locations of All Places Where Such Work is to be Performed. | Estimated Total Cost of Work. | Rate per $100 of Cost. | Amount of Deposit Premium. |
|---|---|---|---|---|
| Erection of addition to factory building. | Mack Avenue and Detroit Terminal R. R. | $50,000.00 | .11 | $55.00 |

"Total benefit premium—Fifty-five and no/100 dollars ($55.00)."

Whatever may have been the intention of the plaintiff or of the Otto Misch Company as to the character of the policy they desired to have issued, it is apparent to us, as it was to the trial court, that this policy does not indemnify the plaintiff for the injuries caused by the negligence of one of its own employees and for

the recovery of which this action is brought.    The injuries which both Quick and Mogg sustained were due to accidents arising out of and in the course of their employment, and could have been compensated for under the workmen's compensation act.    The injured parties elected, however, to proceed against the plaintiff, with whom they had no contractual relations, claiming that their injuries were due to the negligence of one of its employees, as the record clearly shows to have been the fact.

The question presented is not whether the parties injured had a right of recovery against the plaintiff, but whether the policy issued indemnified it against the claims presented, and for which settlement was made.    Under its terms, the plaintiff was indemnified against loss on account of "bodily injuries accidently suffered  *  *  *  by reason of the performance of the work" let to independent contractors and described in the schedule.    The injuries Quick and Mogg sustained were not "by reason of the performance of the work" the contractors were doing.    They were injured in the performance of their work, but not "by reason thereof."    This language clearly applies to injuries sustained by persons not employed, due to the manner in which the work was performed by the employees of the contractors.    As indicated in the schedule, the premium was fixed by a percentage on the total cost of the work.    Had it been intended to cover injury to the workmen, it would have been based on the number of workmen employed and the wages paid them, and the charge therefor would have been greater.

The president of the defendant testified that he found difficulty in preparing such a policy as the provision in the construction contract, heretofore quoted, seemed to require.    The company had no form which seemed to fit the extra requirement.    He wrote and

obtained one from the General Accident, Fire & Life of Detroit, and adopted the one issued to it by type-writing the entire policy.

We cannot but conclude, as did the trial court, that the policy issued "does not contain language sufficient to cover the claims presented by the plaintiff." The language is not ambiguous. Its construction was for the court, and not for the jury.

2. When the proofs were closed, plaintiff's counsel insisted that it could recover on "an oral or parol agreement which was not included in the contract but which we now ask a right in suing on that contract to read into the contract." * * * The trial court declined to accept this view, basing his holding on *Kieis* v. *Insurance Co.*, 117 Mich. 469. In discussing a somewhat similar claim made in that case, after reviewing the decisions, it was said:

"The inference to be drawn from these cases is that, where there is fraud or mistake, equity may afford relief, but will do so cautiously, and will require clear proof of the fraud or mistake. They negative the idea that one may reduce his oral agreement to writing, formally execute or accept and keep it, and at a later time ignore the solemn writing, and bring an action upon a preliminary agreement. This would be an innovation that would render written contracts no better than oral ones, and practically make them subject to variation and contradiction by parol, and, by indirection, evade one of the best and most uniformly settled rules of law, and render obsolete a branch of equity jurisdiction."

The court had theretofore intimated that, in order for plaintiff to recover on its claim that the policy issued was not that which the plaintiff and the Otto Misch Company had applied for, and which they had a right to expect that they would receive, they must seek a reformation in a court of equity, and suggested that, if asked to do so, he would transfer the cause to the equity side of the court. No such request was

made.  Counsel for defendant urge that the reason the request was not made was because under the proofs a court of equity would not have made the reformation. With the weight of the evidence on this question we are not here concerned.  While this claim is not now relied on, counsel discuss the effect which should be given to the oral understanding when the insurance was applied for and defendant's letters relating thereto, under two headings:

"(*a*) The Defendant is Estopped to Assert the Policy as Written to Limit Liability.
"(*b*) The Court has Jurisdiction as to Equitable Estoppel on the Law Side."

These claims will be considered together.  The plaintiff is seeking to recover on a written policy of insurance, accepted by it and in its possession for four years before this action was begun, and more than three years after liability on it was denied, and on which it paid the premium after such denial.  There is no ambiguity in the language of the instrument. It was the duty of the court to place a legal interpretation upon it.  As construed by the trial court, and by this court, plaintiff has no right of action thereunder against the defendant on the facts presented.  The practical construction which the parties put upon the contract may be considered only in cases where the language of the instrument may be said to be ambiguous, or uncertain.  *Finnegan* v. *Worden-Allen Co.*, 201 Mich. 445; *Township of Zilwaukee* v. *Railway Co.*, 213 Mich. 61.

By its claim of estoppel the plaintiff seeks to have the court read into the policy provisions relating to the liability of the defendant not contained therein, or, in other words, to reform the contract to accord with the agreement of the parties at the time the application for insurance was made.  The defendant is not here asserting rights under its contract.  It simply

denies liability thereunder. The burden is on the plaintiff to establish such liability.

There is a clear distinction between the effect of an omission in a policy which the insurer relies on to defeat the action and one which the insured seeks to have incorporated therein as a basis for recovery. As to the former, this court has held that the neglect of the insurer to insert a provision of which its agent was informed at the time the application for insurance was made is, in legal effect, a waiver and estops it from insisting that its omission constitutes a legal defense to an action on the policy. *Gristock* v. *Insurance Co.*, 87 Mich. 428; *Simpson* v. *Insurance Co.*, 184 Mich. 547. As to the latter, we are of the opinion that the policy must be reformed in order for the insured to obtain the benefit of such an omission.

The indemnity promised by the insurer, as expressed in the written contract, may not be enlarged by proof of intention. In *Foley* v. *Railway Co.*, 168 Mich. 496, 497, it was said:

"The offered testimony was not limited to showing the consideration of the contract merely, but *sought to change the scope and effect of the contract, and to cast upon the defendant an obligation which the contract did not require of it.* The court properly rejected such testimony."

Many Michigan cases are cited in support of this holding. See, also, *Diamant* v. *Chestnut*, 204 Mich. 237, 242, where the later cases are referred to.

The judgment is affirmed, with costs to defendant.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.