STONE v. HARRIS.

1. CONTRACTS—VENDOR AND VENDEE—MASTER AND SERVANT.

Contract between plaintiff, a grower and buyer of grapes, and defendant, a transporter and marketer of same, *held,* to establish relationship of vendor and vendee rather than employer and employee where defendant was given complete control over method of disposition and furnished and was responsible for drivers and trucks.

2. SAME—INDEPENDENT CONTRACTOR.

Nor was defendant an independent contractor where contract uses terms "purchase" and "sale" when referring to dealings between the parties, and plaintiff was to receive grower's price plus stipulated commission and defendant the balance, although title was retained in plaintiff until grapes reached ultimate purchaser, apparently as a measure of security.

3. EMBEZZLEMENT—VENDOR AND VENDEE—TITLE.

Acts of embezzlement or larceny are impossible where relation between parties is that of vendor and vendee and grapes are voluntarily delivered to defendant, title remaining in plaintiff merely as security.

4. REFORMATION OF INSTRUMENTS—REMEDY—ACTION AT LAW.

Reformation of bond in court of equity is remedy of plaintiff if the one written is the result of mistake or fraud practiced upon him, but such remedy is not available in this State in action at law brought to enforce bond.

5. SAME—ACTION AT LAW—OMISSION.

Burden is on plaintiff to establish liability of defendant under bond sued upon in action at law and where basis of recovery is an omitted provision, bond must be reformed to obtain benefit of such omission.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted October 17, 1933. (Docket No. 103, Calendar No. 37,439.) Decided December 5, 1933.

Assumpsit by Horace J. Stone against George Harris and Columbia Casualty Company, an Illinois corporation, on a larceny and embezzlement bond. Judgment *non obstante veredicto* for defendant Columbia Casualty Company. Plaintiff appeals. Affirmed.

*George B. Gould* (*Henry M. Kimball,* of counsel), for plaintiff.

*Howard & Howard,* for defendant Columbia Casualty Company.

BUTZEL, J. Horace J. Stone of Mattawan, Michigan, plaintiff, is a grower and also a buyer and shipper of grapes. In the year 1931 he disposed of his grapes through one Jim Portolas. The following year, when the resumption of business relations was sought by Portolas, Stone claims that he demanded some kind of security as a condition precedent to a renewal of his dealings with Portolas, who had become associated with one George Harris, a fellow countryman. A tentative contract was drawn between Stone and the two associates, Portolas and Harris, but it was never executed. Portolas was unwilling to appear as an active participant in the enterprise for fear that it might jeopardize further payments on a disability claim he was collecting from an insurance company. A second agreement named Stone and Harris as the only parties, although the evidence shows that Portolas took an active part in the enterprise.

The contract provided that Harris was to have the exclusive right of sale with respect to all U. S. No. 1 graded Concord grapes that Stone might raise or purchase and have ready for sale at designated shipping points in Michigan. In return, Harris

covenanted that he would not purchase grapes from any other person or corporation. Trucking facilities for the transportation of the grapes to market were to be furnished at Harris' own expense. It was stipulated that Stone was under no circumstances to be liable for the cartage or wages of the drivers transporting the fruit. The truck operators were not to be considered as Stone's employees or agents but were solely under the control of Harris, who agreed to be solely responsible for any damage caused to or by the trucks. Harris was made liable to Stone for any failure on the ·part of his drivers to collect and remit the sums owing for grapes delivered.

It was agreed between the parties that the ownership of the grapes was not to pass from Stone until they had arrived in the hands of the ultimate purchaser. Collections were to be made by the operators of the trucks and the moneys remitted to Stone by certified or cashier's check. After deduction of the grower's price and, in addition, one cent per basket as Stone's commission for the purchase and handling of the grapes, the balance of the money collected was to be paid Harris. Stone was given the right to retain the first $300 due Harris as security for the proper performance of the contract by the latter. Among Harris' other obligations was the duty to furnish a pickup truck and driver for Stone's use in hauling the grapes from the various vineyards to the shipping points at which the fruit was to be loaded into trucks for transportation to market.

The question in this case arises out of that clause of the agreement obligating Harris to obtain a fidelity bond of $5,000 from a reputable surety company, approved by Stone, and indemnifying him

against all losses by reason of Harris' nonperformance or failure to carry out any of the terms and covenants of the contract, and further guaranteeing the fidelity of Harris in his undertakings and agreements. Another clause of the contract required the issuance of cargo insurance on each truckload of fruit to the amount of $500. Harris was also obligated to pay the premiums on fidelity bonds covering all of his drivers.

Upon the execution of the contract, an effort was made to secure a Columbia Casualty Company bond guaranteeing the faithful performance of the agreement. A company agent in Kalamazoo, to whom a copy of the contract was shown, transmitted the application to his principal. The insurer declined to issue such a bond, but declared itself willing to issue one indemnifying against larceny and embezzlement between employer and employee. A bond of this kind was issued and the premium paid by Stone.

Harris, through one Chris Athens and other countrymen, attempted to sell the grapes at wayside stands in Chicago and other cities. Stone delivered a large quantity of grapes under the contract but never received full payment of the proceeds to which he was entitled. Harris, and others with whom he did business, became involved in serious quarrels. Accusation, counter-accusations and even arrests followed, but all criminal charges were eventually dropped. Stone brought the instant suit against Harris and the Columbia Casualty Company on the larceny and embezzlement bond, claiming that Harris had embezzled $1,499.35 due the former as proceeds of sales made by Harris.

The testimony is extremely conflicting as to the manner in which the money disappeared. At the

conclusion of plaintiff's testimony, counsel for defendant Columbia Casualty Company moved for a directed verdict on the ground that the relationship of employer and employee did not exist, that the contract was one of sale between vendor and purchaser, and that the embezzlement and larceny bond issued did not cover the loss. At the conclusion of defendant's testimony, this motion was renewed. In submitting the case, the court restricted the jury's deliberations to the question of embezzlement and its extent, reserving to itself the decision as to whether the claimed defalcations were covered by the bond. The jury found that there had been embezzlements amounting to $1,242.92. Upon motion for a judgment notwithstanding the verdict, the court held that the bond did not cover plaintiff's losses and entered judgment for defendant Columbia Casualty Company.

Plaintiff contends on appeal that the bond was issued to insure the performance of a contract, the terms of which were made known to the insurance company's agent in Kalamazoo, and that the insurer, in the possession of this knowledge, should be held to have issued a bond in conformance with the terms of the contract. The insurer claims, however, that it unequivocally refused to issue a performance bond and only was willing to protect the plaintiff against acts of larceny and embezzlement on the part of employees.

An examination of the contract discloses that a vendor-vendee relationship was established by its terms, as distinguished from the employer and employee relationship that the bond was designed to cover. Harris was given complete control over the methods employed in disposing of the grapes with which he was provided by plaintiff. He was to select

and manage his own drivers and he was solely responsible for their negligence and wrongful acts. Stone's right of supervision was restricted. He was only entitled to demand that sales be made at the highest market price obtainable and that all payments be made to him promptly. The means employed by Harris in marketing the fruit were entirely beyond Stone's control.

Further, we do not believe that Harris even occupied the position of an independent contractor with relation to the plaintiff. It is true that the contract included a stipulation that title should remain in plaintiff until the arrival of the grapes in the hands of the ultimate purchaser, but this seems to have been designed as a measure of security. On the other hand, the presence of language in the contract referring to dealings between the parties in terms of "purchase" and "sale" and the fact that Stone was to receive the unvarying sum total of the grower's price plus the cent per basket "commission" for handling, and Harris was entitled to the balance, however great or small, all lead us to the conclusion that the contract created a vendor-vendee relationship. We believe there is no ambiguity in the contract. If there were, we would be influenced by Stone's testimony in which he declared that Harris was not an employee.

There is no doubt that, under a holding that the contract was one to buy and sell, the bond as issued was ineffective in protecting plaintiff against any failure of performance or wrongdoing under the agreement with Harris. Of course, the provisions of the bond were broad enough to allow the addition of more employees to the schedule appended to the obligation. The sole question here, however, is whether the plaintiff may recover upon the bond as

set forth in the declaration. No question of waiver is involved. The present action is one at law on a bond indemnifying against embezzlement and larceny. Under our holding that a vendor-vendee relationship existed between plaintiff and George Harris, acts of embezzlement or larceny were impossible, inasmuch as Harris really was owner of the grapes for all intents and purposes, despite the provision retaining title in Stone as security.

If the bond, as written, was the result of a mistake or fraud practiced upon the plaintiff, then plaintiff's remedy is to seek reformation in a court of equity. While there is some conflict of authority in the various states, the law in Michigan does not permit reformation in a suit to enforce a bond brought on the law side of the court. In *Michigan Stamping Co.* v. *Michigan Employers' Casualty Co.,* 235 Mich. 4, it was stated:

"By its claim of estoppel the plaintiff seeks to have the court read into the policy provisions relating to the liability of the defendant not contained therein, or, in other words, to reform the contract to accord with the agreement of the parties at the time the application for insurance was made. The defendant is not here asserting rights under its contract. It simply denies liability thereunder. The burden is on the plaintiff to establish such liability.

"There is a clear distinction between the effect of an omission in a policy which the insurer relies on to defeat the action and one which the insured seeks to have incorporated therein as a basis for recovery. As to the former, this court has held that the neglect of the insurer to insert a provision of which its agent was informed at the time the application for insurance was made is, in legal effect, a waiver, and estops it from insisting that its omission constitutes a legal defense to an action on the policy. *Gristock*

v. *Royal Insurance Co.*, 87 Mich. 428; *Simpson* v. *Ohio Farmer's Insurance Co.*, 184 Mich. 547. As to the latter, we are of the opinion that the policy must be reformed in order for the insured to obtain the benefit of such an omission."

See, also, *Kleis* v. *Niagara Fire Insurance Co.*, 117 Mich. 469.

The judgment of no cause of action is affirmed, with costs to defendants.

Weadock, Potter, Sharpe, North, Fead, and Wiest, JJ., concurred. McDonald, C. J., did not sit.