[Civ. No. 15170.   Second Dist., Div. Three.   Nov. 15, 1946.]

CHRYSLER MOTORS OF CALIFORNIA (a Corporation), Plaintiff and Appellant, v. ROYAL INDEMNITY COMPANY (a Corporation), Respondent; HARTFORD ACCIDENT AND INDEMNITY COMPANY (a Corporation), Cross-defendant and Appellant.

Wright & Millikan for Appellants.

Tripp, Callaway, Sampson & Dryden for Respondent.

KINCAID, J. pro tem.—In this action separate appeals have been taken by Chrysler Motors of California, a corporation, hereinafter called "Chrysler," from the judgment in favor of defendant Royal Indemnity Company, a corporation, hereinafter called "Royal," on the complaint and answer herein, and by Hartford Accident and Indemnity Company, a corporation, hereinafter called "Hartford," from the judgment in favor of Royal on its cross-complaint and the answer thereto.

Prior to the commencement of this action Royal and Hartford each issued a liability policy of insurance to Chrysler. Following the happening of certain incidents, which will be hereinafter more fully described, Chrysler, while a trial before a jury was in progress, compromised a negligence action against it for personal injuries by B. R. Miller and N. G. Callahan, and settled their claims by the payment of $18,317.09. Royal and Hartford, questioning liability for payment of these claims under the insurance coverage provided by their respective policies, entered into an agreement in writing with Chrysler by the terms of which they each reimbursed such insured for one-half its outlay in settling said claims and agreed that either insurance company might sue the other, in the name of Chrysler, to obtain a judicial declaration of the respective coverages under such policies. Hartford elected to bring such a suit and filed this action in the name of Chrysler. Royal answered and cross-complained against Hartford. At the trial of the action it was determined that Royal's policy did not but that Hartford's policy did cover the liability represented by the payment of such claims, and judgment was therefore entered in favor of Royal against Hartford for the amount of money paid Chrysler by Royal.

The evidence as to the facts of the accident wherein Miller and Callahan were injured and which led to their suit against

Chrysler is somewhat conflicting, but, viewed most favorably in support of the judgment it is, in effect, as follows: In April, 1939, Chrysler engaged the Bandini Estate Company to do certain construction and alteration work in connection with its Los Angeles plant. Certain subcontracts were entered into by the latter company for electrical work with a subcontractor, Wm. P. Neil Company, Ltd. The work performed by Neil was partly under its contract with Bandini and partly under an arrangement directly with Chrysler. Neil subcontracted certain electrical work to Henderson Electrical Company, by whom one Hollingsworth was employed as foreman and Miller and Callahan as electricians. Lawrence E. Duncan was employed by Chrysler in charge of electrical maintenance of its factory and during the course of the construction and alteration work, and as a part of his duties, he was required to and did lay out much of the detail of the electrical work which was being done by the subcontractors. Duncan supplied most of the information as to the manner, time and place that such work was to be performed.

The accident out of which the action against Chrysler arose occurred August 11, 1939. Callahan, Miller and Hollingsworth were burned by an electrical flash fire which was produced when Miller, in the course of his work in connecting up a panel control board, laid a steel tool across bus bars at the back of such board. This was an unusual type of panel control board, in that the pulling of one switch did not shut off the electrical current from the entire board but in addition to such switch certain "disconnects" were placed some 10 or 11 feet off the ground behind closed doors and had to be separately operated in addition to the switch in order to completely kill the current on the entire board. These facts were not known to Hollingsworth, Miller or Callahan, and on the day of the accident, in order to work thereon, Hollingsworth asked Duncan how to kill the board. The latter, with full knowledge of the subject, told him to pull the specific switch that stuck out in front of the board on the left-hand side, but failed to advise him of the necessity of operating the disconnects that were behind the doors above. Hollingsworth pulled the indicated switch and in the belief that the electrical current on the entire board was killed the three men went to work. The lower busses were tested, found to be without current and one cable was thereupon put in place. While

a second cable was being installed, a tool in the hands of Miller came in contact with the top bus bar which was still charged with electricity and the flash fire and injuries resulted.

■ The question of the responsibility of Chrysler for the injuries sustained by Miller and Callahan was never determined in their suit due to the fact that it was settled out of court. Such settlement becomes presumptive evidence only of the liability of Chrysler, which presumption is subject to being overcome by proof in the instant action. Under such circumstances the questions as to the liability of the insured and whether such liability was covered by the contracts of insurance are still open and may be litigated and determined in this action. (*Lamb* v. *Belt Casualty Co.* (1935), 3 Cal.App. 2d 624, 631 [40 P.2d 311] ; *St. Louis Dressed Beef & Provision Co.* v. *Maryland Cas. Co.* (1906), 201 U.S. 173 [26 S.Ct. 400, 50 L.Ed. 712] ; *Butler Bros.* v. *American Fidelity Co.* (1913), 120 Minn. 157 [139 N.W. 355, 44 L.R.A.N.S. 609].)

The trial judge in the instant case, upon all of the evidence herein including the character of the employment of the injured parties and Duncan, the circumstances under which the injuries were sustained, and the terms of the respective insurance policies, made its specific findings that Royal was under no obligation to defend the action of Miller and Callahan against Chrysler nor to indemnify such insured against liability thereon because the accident through which the injuries were sustained did not occur by reason of and during work let or sublet to independent contractors in connection with the conduct of Chrysler's business within the meaning of the policy of insurance issued by Royal. The court then further found that the accident in question occurred and was caused solely by reason of the negligent acts of Chrysler's employee Duncan, performed in the course of operations necessary and incidental to the conduct of his employer's business, the insurance liability for which was included in and covered by the Hartford policy but was excluded from and not covered by the Royal policy. Appellants' contentions that these findings are erroneous will be taken up in the order in which they appear.

### Liability Under the Royal Policy.

On September 30, 1938, Royal issued a policy of insurance to Chrysler by the terms of which it agreed that if, within the period of one year, "any person or persons shall sustain

any bodily injuries by accident, whether resulting fatally or otherwise, by reason of and during the progress of the work described in Statement 4 of the Schedule, which work has been let or sublet by the Insured to independent Contractors or independent Sub-contractors, and for which injuries the Insured is liable for damages, then the company will indemnify the insured against loss arising out of such liability. . . ." The work under statement 4 is described as "work performed for the insured under contract [in] connection with the construction of additional units and all other construction work and/or the making of changes on or installation of equipment," and the location of all places where such work is to be done includes "Los Angeles, California." As a specific condition the policy provides that it does not cover "3. (c) Any liability in respect of injuries caused or sustained by any employe or employes of the Insured engaged on, or in connection with the work covered by this Policy."

The trial court was correct, in the light of the evidence herein, in finding that the accident, by virtue of which subcontractor Henderson's employees were injured, did not occur *by reason of and* during work let or sublet to independent contractors in connection with the conduct of Chrysler's business within the meaning of the policy of insurance issued by Royal. Under the language of the insurance contract coverage is not established by merely showing that the accident occurred during the work so let or sublet but, in addition thereto, the proof must disclose that it occurred *by reason* thereof. The injuries to Miller and Callahan were not sustained by reason of the work which they were performing for their subcontractor employer, even though they were injured in the performance of such work. While it is true that the accident would not have happened had they not been so engaged, the work itself was not the cause of its happening. It was Chrysler's own negligence, through the agency of its employee Duncan, which was the cause, and, under such circumstances liability is not imposed upon Royal under the terms of its insurance contract. (*Michigan Stamping Co.* v. *Michigan Employer's Casualty Co.* (1926), 235 Mich. 4 [209 N.W. 104] ; *Thompson-Starrett Co., Inc.* v. *Otis Elevator Co.* (1936), 271 N.Y. 36 [2 N.E.2d 35].) Appellants' contention that the policy covers accidents of the kind here in question even though caused by the negligence of Chrysler's em-

ployees, excepting only when caused by such of them as were engaged on or in connection with the work covered by this policy, is without merit.

The next finding of the trial court to which objection is made is that Royal is absolved from liability under its policy due to the fact that the accident occurred and was caused solely by reason of the negligent acts of Chrysler's employee Duncan, performed in the course of operations necessary and incidental to the conduct of his employer's business. The evidence amply supports the finding that Duncan's acts were negligent and solely caused the accident. Appellants argue, however, that the second half of this finding is not so supported and that in order for the acts of Duncan to fall within the exclusion provided by condition 3(c), hereinbefore quoted, he must have been engaged *on the work* to be performed under contract by an independent or subcontractor. They point out that the work let or sublet did not include the laying out of jobs to be done, the inspection and checking of such work as it progressed, and the direction and supervision thereof from time to time by any representative of Chrysler. While it may be conceded that such acts on the part of Duncan were not direct work so let or sublet, appellants overlook the additional words ''or in connection with'' which constitute an added exception requiring consideration. As provided by the quoted condition Royal is absolved from liability for injuries caused by any employee of Chrysler *engaged on, or in connection with the work* covered by the policy. The acts of Duncan, as disclosed by the evidence, were most certainly in connection with the work being performed by subcontractor Henderson for the insured, within the terms of the Royal policy, and, being so connected, it is immaterial as to whether the acts and services so performed by him were of a direct physical or of a supervisory character. It therefore necessarily follows that Royal was under no obligation to defend the suit against Chrysler by the injured men nor to indemnify the insured against liability therefor.

*Liability under Hartford Policy.*

On October 19, 1939, Hartford issued a policy of insurance to Chrysler wherein it agreed ''I. BODILY INJURY LIABILITY To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages

for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined in respect of which the Insured has selected Bodily Injury Liability coverage as evidenced by the entry in the Bodily Injury Column provided therefor in the Declarations.

"DEFINITION OF HAZARDS    Coverage A—OWNERS, LANDLORDS AND TENANTS AND MANUFACTURERS AND CONTRACTORS LIABILITY    The existence, maintenance or use of property in connection with the conduct of the named Insured's business described in the Declarations, all operations which are necessary or incidental thereto, and the prosecution of the Insured's business operations, but excluding liability arising out of any of the hazards hereinafter defined."    Coverages B to G then follow, B being the only one having any pertinency to the issues here presented.

"Coverage B—OWNERS AND CONTRACTORS PROTECTIVE LIABILITY    All work let or sublet to independent contractors in connection with the conduct of the named Insured's business described in the Declarations."

As to coverage B, however, the policy stipulated that liability under such clause would not become effective until October 7, 1939, which is the date of the expiration of Royal's policy hereinabove described.    The remaining coverage of Hartford's policy was to be effective from June 27, 1939, to June 27, 1940.    As previously stated the accident in question occurred August 11, 1939.

Appellant Hartford contends that, under the terms of its policy and all the evidence herein, it is not liable to its assured Chrysler: (1) Under Coverage A because of the fact that liability arising out of the hazards of work let or sublet to independent contractors was specifically and expressly excluded from the coverage provided by A; and (2) under the provisions of Coverage B for the reason that the protection offered by this clause did not become effective until October 7, 1939, a date subsequent to the happening of the accident in which Miller and Callahan were injured.

Respondent readily concedes the second of Hartford's contentions concerning Coverage B, pointing out that the judgment herein was not predicated upon the provisions of that clause but was on the comprehensive coverage of the Hartford

policy, including paragraph A, which was in full force and effect during the period when the injuries in question were sustained.

■ We proceed then to a consideration of the first point made by such appellant. Hartford concedes that it would be liable under the terms of the policy if it were not for the exclusion provision B concerning the hazard of work let or sublet to independent contractors. It then argues in support of its position that the parties to the insurance contract intended, by the use of the word "hazard" to exclude from coverage any of the possible sources of liability incident to work let or sublet to independent contractors, including injuries to the latter's employees, regardless of whether such injuries were caused by negligent acts of its own agents or by any other cause. Such a strained construction of the terms of the policy is neither necessary nor warranted. The policy excludes "liability arising out of any of the hazards hereinafter defined." It then proceeds to enumerate and define six such excepted hazards, including B. Nowhere does it say, as Hartford contends, "any of the hazards involved in . . . work let or sublet. . . ."

The terms of the Hartford policy disclose a generally broad insurance coverage in that such insurer agrees to pay all sums which Chrysler becomes obligated to pay by reason of the liability imposed by law upon it for bodily injury caused by accident and arising out of the existence, maintenance or use of property in connection with the conduct of Chrysler's business, all operations which are necessary or incidental thereto, and the prosecution of its business operations, excepting only, as applicable to the facts herein, "liability arising out of the . . ." hazard defined as "All work let or sublet to independent contractors in connection with the conduct of . . ." Chrysler's business.

It seems readily apparent that the installation of suitable electrical equipment, controllable through a panel board, was necessary to the business of the insured as a manufacturer and assembler of automobiles and that the work being performed in connection therewith at the time of the accident, by both the injured parties and Duncan, was an operation incidental to its use. The sole remaining question then is whether the liability of Chrysler to Miller and Callahan, predicated upon the negligent acts of its agent Duncan while

engaged in the course and scope of his employment, arose out of work let or sublet to independent contractors. The answer to this query is generally similar to that heretofore given in response to the claim of liability under Royal's policy agreement. The injuries were sustained and liability in Chrysler proximately resulted from the negligent acts of its employee Duncan and did not arise out of work let or sublet to anyone, even though happening in the performance of such work. The exclusion is not of persons working for an independent contractor but for liability arising out of work let or sublet to such contractor. (*Gulf Portland Cement Co.* v. *Globe Indemnity Co.* (1945), 149 F.2d 196; *Thompson-Starrett Co., Inc.* v. *Otis Elevator Co., supra,* 271 N.Y. 36 [2 N.E.2d 35]; *Triangle Waist Co.* v. *Gen'l. Acc. Fire & Life Assur. Corp.* (1917), 163 N.Y.S. 687.) Hartford is therefore liable, under its policy of insurance, to indemnify Chrysler in the full amount of the settlement, and Royal is entitled to reimbursement from Hartford for its outlay of one-half thereof.

The judgment is affirmed.

Desmond, P. J., and Wood, J., concurred.