[Civ. No. 18999.   First Dist., Div. Two.   Oct. 31, 1960.]

ARNOLD E. WALTERS, Appellant, v. THE AMERICAN INSURANCE COMPANY (a Corporation), Respondent.

Joseph C. Haughey for Appellant.

Daniel J. O'Brien, Jr., Daniel J. O'Brien III, and Edward Molkenbuhr, Jr., for Respondent.

McGOLDRICK, J. pro tem.*—Plaintiff appeals from a judgment in an action for declaratory relief wherein the plaintiff sought a determination of the rights and obligations of the parties under a comprehensive personal liability endorsement in a comprehensive general automobile liability policy issued by defendant insurer to plaintiff and in effect at the time of the incident involved. The complaint alleges that one Robert J. Byington asserted his claim against plaintiff for damages inflicted as the result of an assault by him upon Byington; that plaintiff notified defendant of said claim; that defendant contended it was not liable under the policy because the damages to Byington were the result of an intentionally inflicted injury and that defendant refused to defend the action. As a consequence thereof and in order to preserve his credit standing, plaintiff settled with Byington for the sum of $6,000, which he now seeks as damages from defendant.

Defendant denied any liability in its answer and alleged that the policy excludes coverage for injury intentionally caused by the insured; that no written notice of the incident was given to defendant as required by the policy; that no determination was made of plaintiff's liability to Byington either by judgment or written agreement to which defendant was a party; that defendant was not responsible for the liability assumed by plaintiff settling Byington's claim for $6,000.

The case was tried before the court, sitting without a jury. Judgment was rendered declaring that defendant was under no obligation to pay the $6,000 to plaintiff under the policy upon the facts presented.

The portions of the personal liability endorsement that are relevant to this appeal are as follows:

"COMPREHENSIVE PERSONAL LIABILITY ENDORSEMENT

"I Coverage A—Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person, and as

---

*Assigned by Chairman of Judicial Council.

damages because of injury to or destruction of property, including the loss of use thereof."

"II Defense, Settlement, Supplementary Payments

"As respects the insurance afforded by the other terms of this endorsement under coverage A the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

"EXCLUSIONS

"This endorsement does not apply:

"  .     .     .     .     .     .     .     .     .     .     .

"(c) to injury, sickness, disease, death or destruction caused intentionally by or at the direction of the insured."

"CONDITIONS

"  .     .     .     .     .     .     .     .     .     .     .

"2. . . . When an occurrence takes place written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. . . .

"  .     .     .     .     .     .     .     .     .     .     .

"6. . . . No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this endorsement, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. . . ."

The incident giving rise to Byington's claim against plaintiff may be summarized as follows: On May 19, 1955, plaintiff, Byington, three other men and a driver motored together from San Francisco to the Hanna Center in Sonoma County for a social engagement. Plaintiff and the other three men left Hanna Center for a round of golf and returned several hours later at about 5 p. m. to find Byington inebriated. A dinner followed which included a discussion regarding the installation of a plaque honoring deceased sponsors of Hanna Center. At this time, Byington became abusive and had to be quieted. Later on, his cane with which he was gesturing was taken from him until the time of departure. On the

return trip to San Francisco, one of the party, named Walsh, was seated in the front to the driver's right. Plaintiff was on a jump seat, also on the right side, and Byington was in the right rear seat. The other two men were in the left rear seat and left jump seat. Shortly after leaving the Center, Byington began using abusive language towards Walsh. Plaintiff told Byington that he should be ashamed of himself, that Walsh was his (Byington's) friend. Byington then grabbed plaintiff's left shoulder with his left hand, pulled plaintiff around and called him a coarse name. The cane was upright in Byington's right hand and about 20 inches from plaintiff's head. Plaintiff pushed the cane back and struck Byington three times with his right hand. At no time did plaintiff get off the jump seat. Plaintiff testified that he knew Byington's reputation for peace and quiet was bad, that he believed himself in imminent peril, and that he struck Byington intentionally in self-defense. Plaintiff was then restrained by one of the other men, the car stopped and Byington and Walsh exchanged seats. The party then returned to San Francisco. This summation was supported by the testimony of the other members of the party and uncontroverted by defendant.

On October 25, 1955, some five months later, plaintiff received a letter from Byington's attorney referring to Byington's claim for damages resulting from plaintiff's alleged assault. Two or three days later, plaintiff contacted Mr. Purcell, his insurance broker (an independent broker and not an agent of defendant), and discussed the prior events with him. At this meeting and subsequently, Purcell told plaintiff that the latter was not covered by defendant's policy under the circumstances. Purcell discussed the matter with Mr. O'Connell, Assistant Pacific Coast Casualty Manager of defendant, and at plaintiff's request arranged a meeting in January of 1956 between plaintiff, Purcell and O'Connell. At this meeting O'Connell told plaintiff that he was not covered. There was a conflict between plaintiff and O'Connell as to whether or not O'Connell stated that he was at the meeting in a nonofficial capacity. There appears also to have been some discussion about plaintiff filing a written claim with defendant and plaintiff's desire to avoid such a procedure because of the unfavorable publicity that might result. There was also testimony that O'Connell told plaintiff that defendant might undertake the defense in the event Byington filed a suit. (Plaintiff subsequently filed a notice with

defendant on March 27, 1957, after the payment of $6,000 to Byington.)

In October 1955, H. F. Hogan, a Bank of America loan officer, heard that Byington was threatening to sue plaintiff for $200,000. Plaintiff told Hogan that he had no insurance coverage. Hogan then informed plaintiff that in the event of a suit plaintiff's unsecured business loans "would immediately have to be put on a secured basis." Plaintiff is the sole owner of a company operating several beauty schools. He dealt solely with Mr. Hogan's bank and all the business loans were unsecured. (The bank records disclosed an unsecured indebtedness of $38,000 on April 1, 1956.) Such a suit would also affect the financing of planned expansion by plaintiff.

Plaintiff had also been discussing the matter with Byington at least once a week. Plaintiff never admitted liability. On May 14, 1956 (the statute of limitations would run on May 18, 1956), Byington told plaintiff that if an understanding was not immediately reached, Byington would file a suit for $200,000. Plaintiff stated that such a suit would ruin his bank credit and agreed to a settlement of $6,000, the asserted total of Byington's medical expenses. The next day, plaintiff gave Byington $2,000 and signed a promissory note for $4,000, the entire sum being paid prior to this action.

The court found that Byington's injuries "were caused by plaintiff in the act of resisting a threatened assault by Byington," that plaintiff's obligation, if any, to Byington has not been determined by a judgment or written agreement to which defendant was a party, and that the payment to Byington was made to protect plaintiff's credit and not as a result of a legal obligation.

The principal issue to be determined on this appeal develops over conflicting interpretations of the provision excluding from coverage under the insurance contract ("injury . . . caused intentionally by . . . the insured"). Plaintiff argues that the provision excluding coverage for "injury . . . caused intentionally by . . . the insured" must be interpreted to mean that the specific injury must have been intended. Here plaintiff intended no injury, rather he intended only to protect himself.

Plaintiff argues that the purpose of the exclusion is to prevent indemnifying one for his wrongdoing. He relies upon the case of *Arenson* v. *National Automobile & Cas. Ins. Co.*, 45 Cal.2d 81 [286 P.2d 816]. The court held that an ex-

clusion provision similar to the one involved here is reasonably understood as designed to prevent indemnifying one against loss from his own wrongful acts and cannot be construed to exclude coverage for the wrongful acts of another in the absence of a clear expression showing such intent. Plaintiff urges on the basis of this decision that self-defense does not constitute wrongdoing and is favored by public policy and the law of California.

Defendant contends that "intentionally" refers merely to the act without any reference to motive; that since the court found that plaintiff intentionally caused Byington's injury, the exclusion applies; that no element of wrongfulness is necessary for such a limitation is implied by law. (Ins. Code, § 533.)

No authority has been called to our attention which answers this precise question. However, well-established rules of construction of insurance contracts apply. ■ In *Arenson* v. *National Automobile & Cas. Ins. Co., supra,* the court said: "The understanding of an ordinary person is the standard used in construing a contract of insurance, and any ambiguity in language must be resolved against the insurer. (*Ransom* v. *Penn Mut. Life Ins. Co.,* 43 Cal.2d 420, 424-425 [274 P.2d 633].) ■ It is also the rule that exceptions and exclusions are construed strictly against the insurer and liberally in favor of the insured. (*Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421, 424-425 [213 P. 42, 26 A.L.R. 123] ; *Pacific Heating & Ventilating Co.* v. *Williamsburg City Fire Ins. Co.,* 158 Cal. 367, 369-370 [11 P. 4].)" ■ If an insurer uses language which is uncertain any reasonable doubt will be resolved against it and the language will be understood in its most inclusive sense for the benefit of the insured. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914] ; *City of Santa Monica* v. *Royal Indem. Co.,* 157 Cal.App.2d 50, 54 [320 P.2d 136].)

■ Defendant argues that the term "intentional" as used in other types of insurance policies relates to the insured's consciousness of the act and its probable consequences; *i.e.,* the injuries to Byington, without reference to motive. Plaintiff urges that an act of self-defense is an intentional act but one in which the actor intends no injury but only to protect himself and that there is coverage under the policy since "intentionally" modifies "injury" in the exclusion provision.

However, in *Arenson* v. *National Automobile & Cas. Ins. Co., supra,* as aforestated, the court held that an exclusion provision such as involved here "is reasonably understood as designed to prevent indemnifying one against loss from his own wrongful acts." While this case involved facts not relevant to the instant case, the court determined that such an exclusion provision did not apply to the named insured for intentional injury committed by another person insured under the same policy on the theory that the named insured was not personally at fault. This case also reveals that section 533 of the Insurance Code codifies the general rule that an insurance policy indemnifying the insured against liability due to his own willful wrong is void as against public policy.

Section 533 of the Insurance Code provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured or of the insured's agents or others." The meaning of "wilful act" as used in section 533, *supra,* was discussed in *Russ-Field Corp.* v. *Underwriters at Lloyd's,* 164 Cal.App.2d 83 [330 P.2d 432], where the court states: "A 'wilful act' as used in this statute connotes something more blameworthy than the sort of misconduct involved in ordinary negligence, and something more than the mere intentional doing of an act constituting such negligence." A contention that it meant simply an act performed intentionally was rejected. If plaintiff acted in self-defense then although he "intended the act," plaintiff acted by chance and without a preconceived design to inflict injury just as though he were acting intentionally, although negligently, and injured someone. The *Arenson* case, *supra,* seems clearly to indicate that an element of wrongfulness or misconduct is connoted by an exclusion provision drafted as in the present case. Such a construction would also be consonant with the public policy provision in section 533 of the Insurance Code.

Acts committed in self-defense are not unlawful. (Civ. Code, § 50; Pen. Code, §§ 692, 693; *People* v. *Lynch,* 101 Cal. 229, 230, 231 [35 P. 860]; *People* v. *Duchon,* 165 Cal. App.2d 690, 693 [332 P.2d 373].) The trial court in the instant case made no finding that the plaintiff used such excessive or improper force that would itself constitute an assault and battery (*McLean* v. *Colf,* 179 Cal. 237 [176 P. 169]; *People* v. *Alexander,* 1 Cal.App.2d 570, 571 [37 P.2d 125]) but did find as has been referred to previously

that the injuries were inflicted by plaintiff in the act of resisting a threatened assault. Since there is no finding of unreasonable or excessive force by plaintiff the court impliedly found that plaintiff acted reasonably and in self-defense towards Byington. (Witkin, California Procedure, vol. 2, p. 1850.)

Plaintiff also argues that defendant wrongfully denied coverage to plaintiff and refused to defend the action which Byington threatened to file, thereby breaching Paragraph II of the Insurance Agreement. Faced with pressure from the bank for security for its loans and reluctant to undergo such a suit, he acted as a reasonable and prudent man would act in settling for the sum of $6,000 and was thereby damaged in that amount.

However, defendant argues that it is only required to defend a suit when the claim presented is covered by the policy; that the duty to defend is measured by the allegations of the complaint; that if Byington had sued plaintiff for assault and battery, the defendant would not be obligated to defend the action. Byington's claim, although not brought to suit, would be for an unprovoked assault and battery and hence there could be no coverage under the policy and therefore no duty of the defendant to settle any claim. Defendant further argues that it agreed to supply counsel in the event of suit. The evidence, however, supports the finding that Mr. O'Connell informed plaintiff that his liability, if any, to Byington was not covered by the insurance contract. There is also some testimony on his part that he told plaintiff that defendant might supply counsel in the event of suit. A reading, however, of the entire record indicates that O'Connell's statements, if any, were that he might supply counsel and were otherwise noncommittal. Moreover, in view of his emphatic general denials of coverage, plaintiff could not reasonably have construed any such statements as an offer to defend.

In the case of *Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654 [328 P.2d 198], the court held that "An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. Certainly an insurer who not only rejected a reasonable offer of settlement but also wrongfully refused to defend should be in no better position than

if it had assumed the defense and then declined to settle. The insurer should not be permitted to profit by its own wrong.''

Section 3300 of the Civil Code provides: ''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.'' This section is applicable to liability insurance contracts. (*Comunale* v. *Traders & General Ins. Co.*, *supra*; *Henkel* v. *Pacific Employers Ins. Co.*, 140 Cal.App.2d 301, 305-306 [295 P.2d 80]; *Venturi* v. *Zurich General Acc. & Liability Co.*, 14 Cal.App.2d 89 [57 P.2d 1002]; *Crain* v. *Security Title Ins. etc. Co.*, 6 Cal.App.2d 343, 345 [44 P.2d 632].) Under the above authorities defendant would be liable for any judgment subsequently recovered against the insured.

Defendant's argument that the complaint of the injured party is the determining factor as to coverage is without merit. While it is true as a general principle of law that an insurer's obligation to defend is measured by the terms of the policy and the pleading of the claimant who sues the insured (*Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 250 [286 P.2d 1000]; *Lamb* v. *Belt Casualty Co.*, 3 Cal.App.2d 624, 630 [40 P.2d 311]; *Greer-Robbins Co.* v. *Pacific Surety Co.*, 37 Cal.App. 540, 544 [174 P. 110]), it is also established that where a settlement of litigation has been made and no judgment establishing the liability of the insured rendered, the question of insurer's liability to defend remains open for adjudication in a later proceeding. (*Ritchie* v. *Anchor Casualty Co.*, *supra*; *Chrysler Motors* v. *Royal Indemnity Co.*, 76 Cal.App.2d 785, 788 [174 P.2d 318]; *Lamb* v. *Belt Casualty Co.*, *supra*.)

Here there was no action or pleading by Byington, whereby the insurer's duty to defend would be measured. That question therefore is open in this proceeding and should be resolved against defendant on the basis of our interpretation of the exclusion provision.

Defendant also contends that its liability for breach of contract is contingent upon a liability being imposed upon plaintiff. In support of this proposition it is urged that the settlement with Byington was not based upon any admitted liability, or legal obligation, but upon personal reasons of the plaintiff and that unless there is some legal obligation to pay

damages, defendant is under no obligation to plaintiff under the terms of the insurance contract.

Paragraph 6 of the contract, as previously stated, provides: ". . . No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this endorsement, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. . . ."

However, the court found that payment to Byington was made to protect the financial standing and credit rating of the plaintiff and not as a result of any legal obligation. In *Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App.2d 624, the court stated at page 630 [40 P.2d 311] : "The denial of liability on the part of the insuring company and its refusal to defend the suits constituted such a breach of the contract that the insured was released from his obligation to leave the management thereof to it, and was justified in proceeding to defend on his own account." Such a breach by the insurer entitles the insured to make any reasonable and bona fide compromise of an action against him. (*Ritchie* v. *Anchor Casualty Co., supra,* 135 Cal.App.2d 245, at page 258 [286 P.2d 1000].)

Although there was no action instituted here, defendant had denied coverage. The record clearly indicates that the filing of a suit would have impaired plaintiff's credit and that such credit would not have been impaired had defendant admitted coverage. Moreover, in making the settlement under the circumstances here present, plaintiff acted reasonably and as a result of defendant's denial of coverage. His present rights against defendant are based upon defendant's breach of the insurance contract and not upon provisions of such contract requiring defendant to pay any amounts for which plaintiff has become legally obligated.

Respondent's final argument is that the plaintiff failed to comply with Paragraph II of the insurance contract; i.e., that is, that no written notice of the incident was given, that O'Connell stated that it would be necessary to report the incident to the claims department and that O'Connell was not dealing with the plaintiff in an official capacity.

The record reveals that O'Connell made no objection to the form of notice given by appellant and emphatically stated that there was no coverage. He had the power to grant or deny coverage. His denial constituted a waiver of final notice.

Moreover, there is no showing that the defendant was prejudiced by the failure to receive notice.

Respondent's claim that O'Connell was acting merely in a personal capacity is without merit. Plaintiff and Purcell, the broker, both testified that O'Connell made no such representation. Furthermore, O'Connell occupied a responsible position with defendant and was empowered to deny coverage, which he did. ▇ In *Comunale* v. *Traders & General Ins. Co.*, 116 Cal.App.2d 198, the court stated at pages 202-203 [253 P.2d 495]: "The law is established that where an insurance company denies liability under a policy which it has issued, it waives any claim that the notice provisions have not been complied with." This rule was reaffirmed in *Estrada* v. *Indemnity Ins. Co.*, 158 Cal.App.2d 129 at pages 138-139 [322 P.2d 294], citing Civil Code, section 1440, and Insurance Code, section 554. ▇ There is nothing in the record to indicate that defendant, having denied coverage, was prejudiced by plaintiff's failure to give a written notice until after the settlement with Byington. Such a showing is necessary before an insurer may assert the defense of lack of notice. (*Employers etc. Ins. Co.* v. *Pacific Indem. Co.*, 167 Cal.App.2d 369, 382 [334 P.2d 658]; *Reed* v. *Pacific Indemnity Co.*, 101 Cal.App.2d 151, 160 [225 P.2d 255].)

The judgment is reversed and the trial court is ordered to enter judgment in favor of the appellant for the sum of $6,000 with his costs of suit.

Draper, Acting P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied November 30, 1960, and respondent's petition for a hearing by the Supreme Court was denied December 21, 1960.